**DOCKET NO. 23-12020**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT
# IN ADMIRALTY

GREAT LAKES INSURANCE SE.,

Plaintiff/Appellant,

v.

BRIAN CRABTREE, ET AL.,

Defendant/Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
IN CIVIL DOCKET FOR CASE #: 9:20-cv-81544-RKA
(Hon. Roy K. Altman)

**Corrected Brief of Appellant GREAT LAKES INSURANCE SE**

Counsel for Plaintiff/Appellant:
 STEVEN E. GOLDMAN, ESQ.
 The Goldman Maritime Law Group
 401 East Las Olas Blvd., Suite 1400
 Fort Lauderdale, Florida 33324
 Tel (954) 332-2448
 Fax (617) 608-5128

MICHAEL I. GOLDMAN, ESQ.
The Goldman Maritime Law Group
233 Harvard St., Suite 211
BROOKLINE, MA 02446
Tel (617) 566-4200
Fax (617) 608-5128

 JACQUELINE L. GOLDMAN, ESQ.
 The Goldman Maritime Law Group
 401 East Las Olas Blvd., Suite 1400
 Fort Lauderdale, Florida 33324
 Tel (954) 332-2448
 Fax (617) 608-5128

*Co-Counsel for Great Lakes Insurance SE*

## Great Lakes Insurance SE v. Brian Crabtree Et Al.
## DOCKET NO. 23-12020
## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Circuit Rule 26.1-1, Appellee Great Lakes Insurance SE certifies that, to the best of our knowledge, the following persons and entities have an interest in this appeal:

- Altman, The Honorable Roy K. – U.S. District Court Judge

- Bryan and Bethea Crabtree, Defendants/Appellees

- Goldman, Jacqueline L. – Attorney for Plaintiff/Appellant

- Goldman, Michael I. – Attorney for Plaintiff/Appellant

- Goldman, Steven E. – Attorney for Plaintiff/Appellant

- Great Lakes Insurance SE – Plaintiff/Appellant

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, Appellant Great Lakes Insurance SE makes the following statement as to corporate ownership:

- Great Lakes Insurance SE is a corporation organized and existing under the laws of the Federal Republic of Germany, with its office and principal place of business located in the Federal Republic of Germany (commercial register number: HRB 230378).

- Great Lakes Insurance SE is a wholly owned subsidiary of Munchener Ruckversicherungs-Gesellschaft (stock ticker symbol MUV2:GR Xetra), a company incorporated in Germany with its principal place of business in

2

Munich, Germany.

Dated:        October 3, 2023


                    THE GOLDMAN MARITIME LAW GROUP
                    Attorneys for Plaintiff/Appellee
                    233 Harvard St., Suite 211
                    Brookline, MA 02446
                    Tel – (617)566-4200
                    Fax – (617)566-4292
                    Cel – (617)671-8657

                    By: /s/ Michael Isaac Goldman
                    MICHAEL I. GOLDMAN, ESQ.
                    MA. BAR NO. 677362

                    By: /s/ Jacqueline L. Goldman
                    JACQUELINE L. GOLDMAN
                    FLA. BAR. NO. 1005573

**Great Lakes Insurance SE v. Brian Crabtree Et Al.**
**DOCKET NO. 23-12020**
**STATEMENT REGARDING ORAL ARGUMENT**

Plaintiff/Appellant Great Lakes Insurance SE respectfully requests that this Court grant oral argument to afford the parties the opportunity to respond to any inquiries from the Court regarding the pertinent facts and/or the application of the relevant legal authorities.

# Great Lakes Insurance SE v. Brian Crabtree Et Al.
## DOCKET NO. 23-12020
## TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT - - - - 2

STATEMENT REGARDING ORAL ARGUMENT - - - - 4

TABLE OF CONTENTS- - - - - - - - - 5

TABLE OF CITATIONS- - - - - - - - 6

STATEMENT OF JURISDICTION - - - - - - - 12

STATEMENT OF THE ISSUES - - - - - - - 12

STATEMENT OF THE CASE - - - - - - - - 14

SUMMARY OF THE ARGUMENT - - - - - - - 26

ARGUMENT AND CITATIONS TO AUTHORITY - - - - 27

   1. Standard of Review and Applicable Law - - - - 27

   2. Application of the Tow-Dismissal Rule is a Two-Step Process - - 27

   3. *Res Judicata* Should Not Be Applied Here Because
      The Defendants Agreed to the First Dismissal - - - - 34

   4. The Law of the Case Doctrine - - - - - - 49

   5. Potential For Malpractice- - - - - - - 51

CONCLUSION - - - - - - - - - 52

CERTIFICATE OF SERVICE - - - - - - - 55

CERTIFICATE OF COMPLIANCE - - - - - - 55

# Great Lakes Insurance SE v. Brian Crabtree Et Al.
## DOCKET NO. 23-12020
## TABLE OF CITATIONS

**Statutes**        **Page**

28 U.S.C. §1292(a)(3)  -  -  -  -  -  -  -  -  -  12

28 U.S.C. §1331

28 U.S.C. §1332

28 U.S.C. §1333  -  -  -  -  -  -  -  -  -  10

28 U.S.C. §1367

**Federal Rules of Appellate Procedure**

F.R.A.P. 26.1  -  -  -  -  -  -  -  -  -  2

**Local Rules of the United States Court of Appeals for the First Circuit**

Local Rule 26.1  -  -  -  -  -  -  -  -  -  2

**Federal Rules of Civil Procedure**

Fed.R.Civ.P. 12(b)(6)28-29

Fed.R.Civ.P. 41(a)(1)(B)13, 26-28, 31-35, 42

**Cases**

*Acadia Ins. Co. v. McNeil*,
116 F.3d 599; 1997 A.M.C. 2409 (1st Cir.1997)  -  -  -  -  -  12

*Aning v. Federal National Mortgage Association*,
754 Fed.Appx. 816 (11th Cir.2018)  -  -  -  -  -  -  32-33

*Arizona v. California*,
460 U.S. 605, 618 (1983)-  -  -  -  -  -  -  -  50, 52

*ASX Inv. Corp. v. Newton*,
183 F.3d 1265, 1268 (11th Cir.1999)  -  -  -  -  -  35, 42-43, 46

*Ater ex rel. Ater v. Follrod*,
238 F. Supp. 2d 928, 953 (S.D. Ohio 2002)   -      -      -      -      -      -   39

*Axon Enter. Inc. v. Vievu LLC*,
2018 WL 317289 (D.Ariz.2018)      -      -      -      -      -   34-35, 38-39

*Ball v. Roar III, LLC*,
773 Fed.Appx. 546 (11th Cir.2019)      -      -      -      -      -      -   31

*Bangor Baptist Church v. Maine, Dept. of Educ. and Cultural Services*,
92 F.R.D. 123, 124 (D.Me.1981)      -      -      -      -      -      -   49-50

*Bonner v. City of Prichard, Ala.*,
661 F.2d 1206, 1207 (11th Cir.1981)   -      -      -      -      -      -   30

*Brotherhood Shipping Co., Ltd. v. St. Paul Fire & Marine Ins. Co.*,
985 F.2d 323, 324; 1993 A.M.C. 2729 (2d Cir.1993)      -      -      -      -   12

*Cabot Golf CL-PP 1, LLC v. Cabot Golf CL-PP Acquisition, LLC*,
2013 WL 3927861 (E.D.Tex.2013)      -      -      -      -      -      -   41

*Cabot Golf CL-PP 1, LLC v. Nixon Peabody, LLP*,
575 Fed.Appx. 216 (5th Cir. 2014)      -      -      -      -      -      -   41

*Campbell v. Advanced Core Concepts LLC*,
2022 WL 31480 (11th Cir.2022)      -      -      -      -      -      -   32

*Carnival Cruise Lines, Inc. v. Shute*,
499 U.S. 585; 1991 A.M.C. 1697 (1991)      -      -      -      -      -   15

*Citibank, N.A. v. Data Lease Financial Corp.*,
904 F.2d 1498, 1501 (11th Cir.1990)   -      -      -      -      -      -   27

*Cohen v. World Omni Financial Corp.*,
254 Fed.Appx. 790, 793 (11th Cir.2007)      -      -      -      -      -   24

*Davis v. White*,
795 Fed.Appx. 764 (11th Cir.2020)      -      -      -      -      -      -   53

*El Conquistador, LLC v. M/Y Surging*,
2018 WL 2208381 (S.D.Fla.2018) - - - - - - - 19

*Ener v. Martin*,
987 F.3d 1328 (11th Cir.2021) - - - - - - - - 53

*Engelhardt v. Bell & Howell Company*,
299 F.2d 480 (8th Cir.1962) - - - - - - - 35

*Exxon Corp. v. Maryland Casualty Co.*,
599 F.2d 659, 661 (5th Cir.1979) - - - - - - 49

*Goodwin v. Reynolds*,
757 F.3d 1216 (11th Cir.2014) - - - - - - - - 53

*Great Lakes Reinsurance (UK) PLC v. Morales*,
2009 WL 10718050 (S.D.Fla.2009) - - - - - - 19

*Grupo HGM Tecnologias Submarina, S.A. v. Energy Subsea, LLC*,
2023 WL 242546 (11th Cir.2023) - - - - - - 19

*Harris v. Hill*,
2021 WL 3729992 (S.D.Ga.2021) - - - - - - - 41

*Harris v. Hill*,
2021 WL 3729973 (S.D.Ga.2021) - - - - - - - 41

*Henry v. City of Mount Dora*,
2022 WL 4282253, p. 2 (11th Cir.2022) - - - - - - 24

*In re Chi-Chi's, Inc.*,
338 B.R. 618 (Bankr.D.Del.2006) - - - - - - 36

*Insurance Co. of North America v. S/S Cape Charles*,
843 F.Supp. 893 (S.D.N.Y.1994) - - - - - - - 19

*Island Stevedoring, Inc. v. Barge CCBI*,
129 F.R.D. 430 (D.P.R.1990) - - - - - - - 35, 39-40

*Kerr Corp. v. Westside Resources, Inc.*,
2007 WL 5613512 (W.D.Wisc.2007)  -     -     -     -     -     -     -     43

*Lake at Las Vegas Invs. Grp., Inc. v. Pac. Malibu Dev. Corp.*,
933 F.2d 724 (9th Cir.1991)  -     -     -     -     -     -     35, 41, 42-43

*Leslie v. Carnival Corp.*
22 So.3d 567 (Mem); 2010 A.M.C. 263 (2009)  -     -     -     -     -     16

*Leslie v. Carnival Corp.*,
22 So.3d 561; 2008 A.M.C. 380 (Fla. 3d DCA 2008)  -     -     -     -     15

*Logan Proffitt Irrevocable Trust v. Mathers*,
2011 WL 9369856 (E.D. Tenn. 2011) -     -     -     -     -     -     -     39

*Long v. Secretary, Department of Corrections*,
924 F.3d 1171 (11th Cir.2019)  -     -     -     -     -     -     -     32

*Maldonado v. U.S. Atty. Gen.*,
664 F.3d 1369, 1375 (11th Cir.2011) -     -     -     -     -     -     27, 32

*Manze v. State Farm Ins. Co.*,
817 F.2d 1062, 1066 (3d Cir. 1987)  -     -     -     -     -     -     -     49

*McCulley v. Bank of Am., N.A.*,
605 Fed.Appx. 875, (11th Cir.2015)  -     -     -     -     -     -     -     52

*McNear v. Wells Fargo Bank, N.A.*,
651 Fed.Appx. 928 (11th Cir.2016)  -     -     -     -     -     -     -     32

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Randall*,
110 F.R.D. 499, 500 (E.D. Cal. 1986) -     -     -     -     -     -     41-42

*Miley v. Burns*,
2023 WL 4447021, (11th Cir.2023)  -     -     -     -     -     -     29, 32

*Moch v. East Baton Rouge Parish School Bd.*,
548 F.2d 594 (5th Cir.1977)  -     -     -     -     -     -     20-31, 31-33

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1; 1972 A.M.C. 1407 (1972) -    -    -    -    -    -    -    - 16

*Narey v. Dean*,
32 F.3d 1521, 1525-26 (11th Cir.1994)    -    -    -    -    -    - 24

*Norfolk Southern Corp. v. Chevron, U.S.A., Inc.*,
371 F.3d 1285 (11th Cir.2004)  -    -    -    -    -    -    -    -    - 27

*Openwater Safety IV, LLC v. Great Lakes Insurance SE*,
435 F.Supp.3d 1142 (D.Colo.2020)    -    -    -    -    -    - 14-15

*Poloron Prod., Inc. v. Lybrand Ross Bros. & Montgomery*,
534 F.2d 1012 (2d Cir. 1976)    -    -    -    -    -    - 33, 35-38, 44, 48

*Priestly v. Comrie*,
2007 WL 4208592 (S.D.N.Y.2007)    -    -    -    -    -    -    - 36

*Rogers v. DaimlerChrysler Corp.*,
2007 WL 2746914 (N.D.Oh.2007)    -    -    -    -    -    -    - 39

*Rybovich Boat Company, LLC v. M/Y BLUE STAR*,
546 F.Supp.3d 1270 (S.D.Fla.2021)    -    -    -    -    -    - 19

*Sealey v. Branch Banking and Trust Company*,
693 Fed.Appx. 830, 834 (11th Cir.2017)    -    -    -    - 33-35, 45-46

*Sentry Select Ins. Co. v. Royal Ins. Co. of America*,
481 F.3d 1208; 2007 A.M.C. 913 (9th Cir.2007)    -    -    -    - 19

*Sheet Metal Workers' Nat. Pension Fund Bd. of Trs. v. Courtad, Inc.*,
No. 5:12-cv-2738, 2013 WL 3893556, at *5 (N.D. Ohio July 26, 2013)    - 39

*Shute v. Carnival Cruise Lines, Inc.*,
804 F.Supp. 1525, (S.D. Fla. 1992)    -    -    -    -    -    -    - 50

*Solid 21, Inc. v. Ulysse Nardin, USA Inc.*,
2019 WL 7933684 (S.D.Fla.2019)    -    -    -    -    -    - 41, 46-47

*Springer v. Allstate Life Ins. Co. of New York*,

94 N.Y.2d 645, 710 N.Y.S.2d 298, 731 N.E.2d 1106, 1108 (2000) - - 15

*Stokes v. Markel American Insurance Company*,
595 F.Supp.3d 274 (D.Dela.2022) - - - - - - - - 19

*Streicher v. U.S. Bank National Association*,
666 Fed.Appx. 844, 846 (11th Cir.2016) - - - - - - 30

*Surowitz v. Hilton Hotels Corp*.,
383 U.S. 363 (1966) - - - - - - - 35, 49

*Sutton Place Development Co. v. Abacus Mortg. Inv. Co.*,
826 F.2d 637, 8 Fed. R. Serv. 3d 887 (7th Cir. 1987) - - - 44

*Toole v. Baxter Healthcare Corp.*,
235 F.3d 1307 (11th Cir. 2000) - - - - - - - 50

*Torres v. Wal-Mart Stores East, L.P.*,
555 F.Supp.3d 1276, 1300 (S.D.Fla.2021) - - - - - 33, 53

*TCW Special Credits v. Fishing Vessel Chloe Z*,
238 F.3d 431 (Table), 2000 WL 1277922 (9th Cir.2000) - - - 33, 38, 49

*United States v. Escobar–Urrego*,
110 F.3d 1556 (11th Cir.1997) - - - - - - - 50

*United States v. Nature's Way Marine, L.L.C.*,
904 F.3d 416, 419 (fn. 5); 2018 A.M.C. 2651 (5th Cir.2018) - - - 12

*U.S. v. Davila*,
749 F.3d 982 (11th Cir.2014) - - - - - - - 53

*Western Group Nurseries, Inc. v. Ergas*,
211 F.Supp.2d 1362, 1368 (S.D.Fla.2002) - - 12-13, 29-30, 34, 40, 51-52

**Other References**
*Henry VI, Part II*, Act IV, Scene 2,
by William Shakespeare - - - - - - - - - 13

9 C. Wright & A. Miller, Federal Practice & Procedure § 2368 (3d ed.) - 36

## Great Lakes Insurance SE v. Brian Crabtree Et Al.
### DOCKET NO. 23-12020
### STATEMENT OF JURISDICTION

As the present suit concerns a policy of marine insurance on a pleasure vessel, the District Court exercised subject matter jurisdiction based on admiralty, 28 U.S.C. §1333. *Acadia Ins. Co. v. McNeil*, 116 F.3d 599, 602; 1997 A.M.C. 2409 (1st Cir.1997)

As the Plaintiff/Appellant is appealing from the District Court's award of partial summary judgment to the Defendant/Appellee, this Court has jurisdiction under 28 U.S.C. §1292(a)(3) from a non-final order of the District Court which "determined the rights of liabilities of the parties" in an admiralty matter. *United States v. Nature's Way Marine, L.L.C.*, 904 F.3d 416, 419 (fn. 5); 2018 A.M.C. 2651 (5th Cir.2018) (exercising jurisdiction over an appeal from an order granting partial summary judgment), *Brotherhood Shipping Co., Ltd. v. St. Paul Fire & Marine Ins. Co.*, 985 F.2d 323, 324; 1993 A.M.C. 2729 (2d Cir.1993) (exercising jurisdiction over an appeal from an order granting partial summary judgment).

### STATEMENT OF THE ISSUES

"The two dismissal rule does not bar a subsequent suit, but instead merely states that when the rule applies, the dismissal of the second suit operates as an adjudication on the merits; once there is an adjudication on the merits, it is the doctrine of *res judicata* which bars subsequent suits on the same cause of action." *Ergas*, *infra*. This dispositive distinction resolves the whole appeal. "An

adjudication on the merits", which is all that is mandated by Fed.R.Civ.P. 41(a)(1)(B), is not enough to bar a later suit on the basis of *res judicata*. Since there is a recognized exception to *res judicata* where one of the dismissals is voluntary, the District Court acted beyond its power and committed reversible error by ignoring the doctrine of *res judicata* and instead relying solely on the text of Fed.R.Civ.P. 41(a)(1)(B) to dismiss the Plaintiff/Appellant's third-filed declaratory judgment action.

Therefore, this appeal exists for only three reasons:

1. The District Court misunderstood the difference between the strict text of Fed.R.Civ.P. 41(a)(1)(B) ("adjudication on the merits") and *res judicata*, leading to the fatal error of ignoring the exceptions to the rule of *res judicata*.

2. Counsel for the Defendant/Appellees is playing the sort of dishonest lawyer games that give the whole profession a bad reputation.[1]

3. It is "manifestly unjust" to punish Appellant GREAT LAKES INSURANCE SE for the "gamesmanship" of Appellees BRYAN CRABTREE and BETHEA CRABTREE.

---

[1] "The first thing we do, let's kill all the lawyers." *Henry VI, Part II*, Act IV, Scene 2, by William Shakespeare.

Therefore, this Court should reverse the District Court's errant decision and hold that The Defendant/Appellees should not be rewarded for their counsel's dishonesty.

## STATEMENT OF THE CASE

The facts underlying the present declaratory judgment action, Case no. 1:19-cv-23692 (hereinafter "Dec Action #3)[2], began with an application for a policy of marine insurance (hereinafter "the Application") submitted by the Defendants/Appellee, BRYAN CRABTREE and BETHEA CRABTREE (hereinafter "the CRABTREES"), to Concept Special Risks, Ltd. (hereinafter "Concept"), the underwriting and claims handling agent for Plaintiff/Appellant GREAT LAKES INSURANCE SE (hereinafter "GLI"). Dec Action #3, ECF no. 1. In response, GLI agreed to issue to the CRABTREES a "Temporary Binder," which is a short term policy of marine insurance issued to afford limited coverage until the time that the applicant submits additional information requested by the underwriter. Dec Action #3, ECF no. 1, p. 3.[3] The Temporary Binder afforded coverage until

---

[2] As detailed in more depth below, this declaratory judgment action was originally filed in the United States District Court for the District of Montana and was assigned Case no. 9:19-cv-00164.

[3] Under New York law, a "temporary binder" is a short-term insurance policy that an insurance company issues as a short-term gap-filling measure until a more formal arrangement is reached. *Openwater Safety IV, LLC v. Great Lakes Insurance SE*, 435 F.Supp.3d 1142 (D.Colo.2020), *Springer v. Allstate Life Ins. Co. of New York*, 94 N.Y.2d 645, 710 N.Y.S.2d 298, 731 N.E.2d 1106, 1108 (2000).

May 24, 2019. Dec Action #3, ECF no. 1-3, p. 2. The coverage was conditioned upon, and would not be effective until, the CRABTREES submitted various documents, such as a Current Out of Water Condition and Valuation Survey, a Hurricane Plan, and a Letter of Survey Recommendations Compliance. Dec Action #3, ECF no. 1-3, p. 3. The Temporary Binder afforded $250,000 in first-party property damage coverage for the vessel named *Brandison*, a 2000 43' Privilege with Volvo twin 39hp diesel engines, bearing hull ID number JMA52U07B001 (hereinafter "the Vessel"). Dec Action #3, ECF no. 1-3, p. 2. As part of the Temporary Binder, the CRABTREES warranted that the Vessel would be "confined to East Coast US, Florida[,] and the Bahamas – not to exceed 250 miles offshore. Dec Action, #3, ECF no. 1-3, p. 3.

On May 7, 2019, the Vessel suffered extensive damage due to a fire (hereinafter "the Loss") while it was being stored on land at Cracker Boy Boat Works in Riviera Beach, Florida. Dec Action #3, ECF no. 1, p. 3. Following a report of the Loss and a demand for coverage, GLI investigated the Loss and determined that the CRABTREES had not complied with the conditions of the Temporary Binder, therefore rendering the Temporary Binder ineffective and baring all coverage for the Loss. ECF no. 1, pp. 4-5.

Based on the facts found in the course of its investigation, GLI denied coverage for the CRABTREES claim and caused to be filed a complaint for

15

declaratory judgment in the United States District Court for the District of Montana,

Case 9:19-cv-00120 (hereinafter "Dec Action #1"), asking that court to rule that the

Temporary Binder afforded no coverage for the Loss. Dec Action #1, ECF no. 1.

The Temporary Binder's express forum selection clause stated:

> It is also hereby agreed that any dispute arising hereunder shall be subject to the exclusive jurisdiction of the Federal courts of the United States of America, in particular, the Federal District court within which you the Assured resides or the Federal District court within which your insurance agent resides.

> Dec Action #1, ECF no. 1-2, p. 16.[4]

The only address GLI knew for the CRABTREES' residence was the address

disclosed on the first page of the Application, and which was therefore printed on

the declarations page of the Temporary Binder, 1001 S. Main Street, Ste 5178,

Kalispell, MT 59901. Dec Action #1, ECF no. 1-1, p. 1 and ECF no. 1-2, p. 1.

Moreover, the address of the CRABTREES' agent, Burns & Wilcox Ltd., was 30833

Northwestern Hwy, Suite 220, Farmington Hills, MT 48334. Therefore, in

deliberate compliance with the terms of the forum selection clause, GLI filed Dec

Action #1 in Montana. Dec Action #1, ECF no. 1-2, p. 16.

---

[4] Forum selection clauses in maritime contracts, including standard form adhesion contracts, are presumptively valid and enforceable. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585; 1991 A.M.C. 1697 (1991), *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1; 1972 A.M.C. 1407 (1972), *Leslie v. Carnival Corp.*, 22 So.3d 561; 2008 A.M.C. 380 (Fla. 3d DCA 2008), *aff'd*, 22 So.3d 567 (Mem); 2010 A.M.C. 263 (2009).

Shortly thereafter, the CRABTREES retained the law firm of Perry & Neblett,

P.A., who are based in Miami, FL, to represent them. Following a conference,

counsel for GLI made the following proposal via email:

> OK, here's the deal on offer…
>
> Goldman & Hellman will file in the Southern District of Florida the exact same Complaint as the one presently pending in the District of Montana, with our local counsel ***dismissing the latter action without prejudice***. Upon filing in the federal court in Miami, we will provide the Perry & Neblett firm with FRCP 4 Requests for Waiver of Personal Service on both Defendants, and it is agreed that these waivers will be executed and returned to the undersigned in a timely manner for filing with the Court in Miami.
>
> Defendants agree to file an Answer in response to the Complaint in the federal district court in Miami, ***and agree to not dispute service, jurisdiction, or venue in Miami***.
>
> Dec Action #3, ECF no 14-2, p. 1 [emphasis added].

On August 28, 2019, counsel for the CRABTREES agreed to the proposal and

responded:

> As previously advised numerous times: "We agree to jurisdiction in the Southern District of Florida and agree to accept service provided that the case is dismissed and the Complaint is re-filed. That being said we cannot agree to Answer a Complaint that we have not seen and that has not been filed."
>
> The only disagreement relates to the fact that we cannot agree to Answer a Complaint that we have not seen and that has not been filed. We also ask that you please provide our office with a copy of the Complaint allegedly filed in Montana for our review.
>
> Dec Action #3, ECF no. 14-2, p. 2.

Pursuant thereto, and by mutual agreement of the Parties, GLI filed a notice of voluntary dismissal without prejudice. Dec Action #1, ECF no. 5. The next day, the District of Montana dismissed Dec Action #1 without prejudice. Dec Action #1, ECF no. 6.

Next, in accordance with the terms agreed between the parties, GLI refiled its declaratory judgment action in the Southern District of Florida on September 5, 2019. Case no. 1:19-cv-23692 (hereinafter "Dec Action #2), ECF no. 1. However, instead of answering Dec Action #2, counsel for the CRABTREES breached both the agreement between the parties and the Temporary Binder's forum selection clause by filing an action against GLI in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Case no. 2019-028464-CA-01 (hereinafter "the State Court Action").[5] The State Court Action was filed on September 26, 2019. The State Court Action, Filing #96332095, Dec Action #2, ECF no. 10, p. 2.

The State Court Action named additional parties who were citizens of Florida, based upon which counsel for the CRABTREES alleged that, in the absence of diverse citizenship, no federal court could exercise jurisdiction over all the claims

---

[5] It must always be borne in mind that the District Court in Montana has already held that counsel for the CRABTREES have been engaged in the precise sort of "gamesmanship" that courts are supposed to discourage. Dec Action #3, ECF no. 20, p. 3.

18

between all the parties. Dec Action #2, ECF no. 10, p. 8.[6] The CRABTREES moved

to dismiss Dec Action #2, but deliberately failed to inform that Court that Dec Action

#1 was dismissed by the mutual agreement of the parties. *Id.* At this point, it had

become obvious that opposing counsel's insistence that the CRABTREES could not

commit to answering a complaint not yet filed was in fact a ruse to get this matter

heard in Florida state court, a violation of both the terms of the agreed dismissal of

Dec Action #1 and in flagrant contravention of the Policy's forum selection clause.

Once it was revealed that the CRABTREES' consent to jurisdiction of the

United States District Court in the Southern District of Florida had been a sham, GLI

refiled its original declaratory judgment action in the United States District Court

for the District of Montana on October 8, 2019, which was the only court in which

_____

[6] Apparently, counsel for the CRABTREES is not only dishonest, but was out sick on the day in law school when they taught supplemental jurisdiction under 28 U.S.C. §1367, under which a federal court sitting in admiralty may exercise supplemental jurisdiction over non-admiralty claims arising out of the same case or controversy, entirely without regard to the absence of federal question jurisdiction under §1331 or diversity jurisdiction under §1332. *Grupo HGM Tecnologias Submarina, S.A. v. Energy Subsea, LLC*, 2023 WL 242546 (11th Cir.2023), *Sentry Select Ins. Co. v. Royal Ins. Co. of America*, 481 F.3d 1208; 2007 A.M.C. 913 (9th Cir.2007), *El Conquistador, LLC v. M/Y Surging*, 2018 WL 2208381 (S.D.Fla.2018) (plaintiff represented by the law firm of Perry & Neblett, P.A.), *Great Lakes Reinsurance (UK) PLC v. Morales*, 2009 WL 10718050 (S.D.Fla.2009), *Insurance Co. of North America v. S/S Cape Charles*, 843 F.Supp. 893 (S.D.N.Y.1994). Perry & Neblett, P.A. holds itself out as having some passing familiarity with federal admiralty law (https://perryneblett.com/practice-areas/maritime-admiralty/). *Stokes v. Markel American Insurance Company*, 595 F.Supp.3d 274 (D.Dela.2022), *Rybovich Boat Company, LLC v. M/Y BLUE STAR*, 546 F.Supp.3d 1270 (S.D.Fla.2021).

it was confident of jurisdiction based on the forum selection clause.  Dec Action #3, ECF no. 1.  Since Dec Action #2 filed in the Southern District of Florida had only been filed as a result of the CRABTREES' dishonest gamesmanship, GLI unilaterally filed a notice of voluntary dismissal without prejudice.  Dec Action #2, ECF no. 11.

Throughout October and November 2019, GLI attempted to serve the Defendants with a copy of the Compliant, but it immediately became clear that they were evading service, no doubt in hopes of continuing their litigation in the Florida state court.  Once GLI became aware of their Georgia address, the process server attempted to serve the CRABTREES there on four different occasions throughout October and November 2019: three times he went to the door of the unit and did not receive an answer, despite hearing activity inside the unit, indicating that someone was inside but simply refusing to answer.  Dec Action #3, ECF no. 5, p. 3, ECF no. 6, p. 3.  Twice the process server was not permitted to go up to the unit, and the concierge told him that the CRABTREES were either not in the unit or were out of the country.  *Id*.  Then on November 5, 2019, frustrated by the Defendants' evasive actions, the process server left a copy of the Complaint and Summons with the concierge at their Georgia address.  ECF no. 6, p. 3.  Finally, in an abundance of caution, a different process server personally served BRYAN CRABTREE at the Georgia address on December 10, 2019.  ECF no. 13, p. 2.

Three days later, the CRABTREES filed a *pro se* Motion to Dismiss, arguing that Dec Action #3 should be dismissed for fraud and insufficient service of process. Dec Action #3, ECF no. 11. The CRABTREES' *pro se* Motion to Dismiss contained no mention whatsoever of Fed.R.Civ.P. 41(a)(1)(B), otherwise known as the "two-dismissal rule." *Id.* Rather, the CRABTREES argued that GLI failed to properly serve them in what they characterized as an attempt to obtain a default judgment against them. *Id*, p. 4.

In opposing the CRABTREES' Motion to Dismiss, it was necessary for GLI to protect itself against the allegations of bad faith put forth by opposing counsel, and to make clear that it was in fact the CRABTREES (and their counsel) who had engaged in bad faith, specifically, by agreeing to a dismissal of the first action in favor of proceeding in federal court in Florida, then reneging on the agreement and filing their own state court action in contravention of the forum selection clause, and then evading service when GLI tried to serve them. Dec Action #3, ECF no. 14. GLI attached copies of emails exchanged between counsel detailing their agreement to dismiss the first declaratory judgment action and proceed in federal court in Florida. ECF no. 14-2, p. 2.[7]

---

[7] Wherein Jack Wynn, Esq., counsel for the Defendants stated on August 28, 2019, "[w]e agree to jurisdiction in the Southern District of Florida and agree to accept service provided that the case is dismissed and the Complaint is refiled." *Id.*

Next, on reply, the CRABTREES raised – for the first time – their argument that GLI had violated the two-dismissal rule. Dec Action #3, ECF no. 17, p. 1. The CRABTREES argued that "[p]laintiff has violated the two-dismissal rule as unambiguously stated in Federal Rule of Civil Procedure 41(a)(1)," and "the second dismissal was an adjudication on the merits – regardless of the label or intent of the voluntary dismissal." *Id*, pp. 1-4. This would be the exact same argument raised by the CRABTREES again and again, i.e., that the two-dismissal rule applied, regardless of their counsel's obvious dishonesty in engineering the dismissal of Dec Action #1.

The District Court in Montana issued an Order *sua sponte*, permitting GLI to file a sur-reply (Dec Action #3, ECF no. 18), which GLI filed on February 5, 2020. Dec Action #3, ECF no. 19.[8] GLI's sur-reply further described the agreement that had been reached between counsel and the shocking tactics resorted to by the CRABTREES' counsel. Dec Action #3, ECF no. 19, p. 3. In an Order dated February 6, 2020, the District Court in Montana denied the CRABTREES' Motion to Dismiss. Dec Action #3, ECF no. 20. In addressing their two-dismissal rule argument, the District Court in Montana stated that "the prior dismissals [we]re

---

[8] In an attempt to clearly describe these confusing procedural matters, the capitalized phrase "District Court in Montana" refers to the actions taken in Dec Action #3 before the transfer to the Southern District of Florida. All court action in Dec Action #3 taken after that transfer is referred to solely as the conduct of Judge Altman.

attributable to gamesmanship on the part of the Crabtrees." *Id*, at p. 3. The District Court in Montana further held that "[t]he first District of Montana case was voluntarily dismissed based on the Crabtrees' attorneys' clear representations that they would accept service in Florida," specifically citing to the emails exchanged between counsel as evidence of such false representations. *Id*, at p. 4, *citing*, ECF no. 14-2. Finally, the CRABTREES never moved to appeal or have the District Court in Montana reconsider its Order that the two-dismissal rule did not apply due to their "gamesmanship."

This is absolutely vital to note. It is an undisputed part of the factual record, expressly found by the District Court in Montana, that the sole reason for all the multiple actions that have been filed and the present appeal is "gamesmanship" on the part of counsel for the CRABTREES, and their obviously dishonest representations made to obtain dismissal of actions properly filed in both Montana (Dec Action #1) and in Florida (Dec Action #2). Nowhere in these proceedings have either the CRABTREES or Judge Altman refuted the District Court in Montana's finding "that the prior dismissals [were] attributable to gamesmanship on the part of the Crabtrees." Dec Action #3, ECF no. 20, p. 3.

Rather than being chastened by such an obvious remonstration from the District Court, the Defendants refused to let the matter rest and chose to include

reference to the two-dismissal rule as an Affirmative Defense in their Answer.  Dec Action #3, ECF no. 38, p. 7.[9]

In March of 2020, GLI was forced to file a motion to dismiss in order to be released from the Florida state court litigation the CRABTREES had filed in contravention of the Temporary Binder's forum selection clause.  Dec Action #3, ECF no. 198-1.  GLI motion to dismiss was granted in July 2020.  Dec Action #3, ECF no. 198-3.

Dec Action #3 was then transferred to the Southern District of Florida on the CRABTREES' unopposed motion, where the matter was assigned to Judge Altman. Dec Action #3, ECF no. 44 and ECF no. 46.  Although the CRABTREES' brief in support of their motion to transfer contained argument regarding the two-dismissal rule, the District Court in Montana did not rule on the issue, seemingly because it had already been ruled upon.  *Id*.

---

[9] "As their **Second Affirmative Defense**, Defendants state that this Honorable District Court is devoid of subject matter jurisdiction due to Plaintiff's double voluntary dismissal, in violation of the 'two dismissals rule' of Federal Rule of Civil Procedure 41(a)(1)."  *Id* [emphasis in original].  Adding to dishonesty and gamesmanship, counsel for the CRABTREES is making legal assertions which have no support.  This Court has stated on multiple occasions that *res judicata* is not a jurisdictional issue, which means that violation of the rule has nothing whatsoever to do with the District Court's subject-matter jurisdiction.  *Henry v. City of Mount Dora*, 2022 WL 4282253, p. 2 (11th Cir.2022), *Cohen v. World Omni Financial Corp.*, 254 Fed.Appx. 790, 793 (11th Cir.2007), *Narey v. Dean*, 32 F.3d 1521, 1525-26 (11th Cir.1994).  Non-jurisdictional defects can be waived.

Later, Judge Altman granted in part GLI's Motion for Judgment on the Pleadings and struck the Defendants' two-dismissal affirmative defense. Dec Action #3, ECF no. 64 and ECF no. 138. During the hearing on that motion, Judge Altman specifically denied opposing counsel's request to file a motion for summary judgment on the two-dismissal rule because the deadline for dispositive motions had already passed.[10] But, Judge Altman also stated that the CRABTREES had not previously made the "textual argument" that Fed.R.Civ.P. 41(a)(1)(B), by its plain language, does not contain an exception where one or both prior dismissals were not unilateral, and so stated that the CRABTREES would be permitted to seek judgment as a matter of law on the issue per Fed.R.Civ.P. 50, should this case proceed to trial. *Id*, at 22:19-25 and 29:8-9. Rather than wait for trial, the CRABTREES filed their Motion per Fed.R.Civ.P. 52(c) on March 15, 2022. ECF no. 146. Judge Altman denied the Defendant's Motion for Judgment on Partial Findings as premature. ECF no. 193, p. 1.

But, bafflingly, and for reasons the undersigned cannot begin to understand, Judge Altman decided to completely reverse course on its prior ruling that the CRABTREES would not be permitted to file a summary judgment motion, and *sua sponte*, ordered that they would be permitted to do just that, and file a Rule 56 motion

---

[10] *See* Transcript of hearing, a true and correct copy of which was previously filed as ECF no. 146-1, at 39:19-23, and 42:6-8.

regarding the two-dismissal issue. ECF no. 193, pp. 2-4. Defendants filed their

Motion for Summary Judgment on October 4, 2022. *See* ECF No. 194.

Although he could not find a single case actually supporting his decision,

Judge Altman deliberately ignored all the relevant precedent and held that a strict

reading of the words of the rule required the dismissal of Dec Action #3, despite the

District Court in Montana's finding that it was the CRABTREES who were guilty

of gamesmanship. Dec Action #3, ECF no. 208, p. 10.

## SUMMARY OF THE ARGUMENT

The District Court made a fatal, reversible error in confusing "an adjudication

on the merits" under Fed.R.Civ.P. 41(a)(1)(B) with *res judicata*. By confusing these

two related, but distinct issues, the District Court made the mistake of thinking that

"an adjudication on the merits", standing alone, was enough to apply the doctrine of

*res judicata* and bar GLI from filing Dec Action #3. As a result, the District Court

ignored the recognized exception to *res judicata* where one of the dismissals was

with the consent of the other party, electing instead to reward the dishonest

gamesmanship of counsel for CRABTREE.

## ARGUMENT AND CITATIONS TO AUTHORITY

### I.       Standard of Review and Applicable Law

A district court's dismissal on the basis of *res judicata* "is a pure question of law" and subject to *de novo* review. *Maldonado v. U.S. Atty. Gen.*, 664 F.3d 1369, 1375 (11th Cir.2011), *quoting*, *Norfolk Southern Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285 (11th Cir.2004).

"[A] federal court must apply federal law to determine the preclusive effect of a prior federal court decision." *Citibank, N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498, 1501 (11th Cir.1990).

### II.      Application of the Two-Dismissal Rule is a Two-Step Process

The question before this Court is not, "was the voluntary dismissal of Dec Action #2 an adjudication on the merits under Fed.R.Civ.P. 41(a)(1)(B)?"   It undoubtedly was.  Still, since this concession is absolutely irrelevant to the issue of

*res judicata*, Judge Altman was wrong to rely solely on this undisputed point. Rather, this appeal raises a wholly separate question which Judge Altman committed reversible error by refusing to consider: "Since there is an adjudication on the merits under Fed.R.Civ.P. 41(a)(1)(B), does that give rise to *res judicata* and bar GLI's third dec action?" Since punishing GLI for the gamesmanship of the CRABTREES and the dishonesty of their attorney is "manifestly unjust," the answer to the second question is, "the present case clearly falls into the well established exception for *res judicata* when one of the dismissals is by stipulation of the parties."

This whole appeal turns on the second question because, under federal law, *res judicata* and "adjudication on the merits" under Fed.R.Civ.P. 41(a)(1)(B) are not the same thing. An "adjudication on the merits" under Fed.R.Civ.P. 41(a)(1)(B) is a necessary but not sufficient condition for the dismissal of a third action under the legal rule of *res judicata*. Therefore, since affirmance of Judge Altman's decision would result in "manifest injustice" and reward opposing counsel's dishonesty, the circumstances of the present case trigger this Court's recognized exceptions to the legal rule of *res judicata*.

Judge Altman made a reversible error in thinking that an "adjudication on the merits" under Fed.R.Civ.P. 41(a)(1)(B) is the same as *res judicata*. However, these are two distinct issues, and the satisfaction of the first, standing alone, cannot suffice for a third-filed action to be dismissed. *See cases analyzed infra.* The fatal flaw in

Judge Altman's decision is the mistaken belief that, after two voluntary dismissals, Fed.R.Civ.P. 41(a)(1)(B) functions as an ***automatic*** bar to the filing of a third case, without any need to consider *res judicata*. Judge Altman held that, since the text of Fed.R.Civ.P. 41(a)(1)(B) does not articulate any exceptions, exceptions to *res judicata* must not exist ("We, in short, decline Great Lakes's invitation to 'elaborate unprovided-for exceptions' to Rule 41"). ECF no. 208, p. 11. By conjuring this fallacious rule, Judge Altman was able to ignore the dispositive difference between "adjudication on the merits" under Rule 41(a)(1)(B) and the separate legal rule of *res judicata*.[11] Because this belief is mistaken, Judge Altman's whole decision must fall.

"The two dismissal rule does not bar a subsequent suit, but instead merely states that when the rule applies, the dismissal of the second suit operates as an adjudication on the merits; once there is an adjudication on the merits, it is the doctrine of res judicata which bars subsequent suits on the same cause of action." *Western Group Nurseries, Inc. v. Ergas*, 211 F.Supp.2d 1362, 1368 (S.D.Fla.2002).[12] This one sentence perfectly explains the distinction between these

---

[11] Perhaps Judge Altman was too busy crafting poor puns ("two plus nine doesn't *always* equal eleven") to actually read the text of Rule 41(a)(1)(B), or the decisions from this Court (*Miley*, *supra*), the Second Circuit (*Poloron*, *supra*), and the Ninth Circuit (*TCW*, *supra*). ECF no. 208, p. 10.

[12] *Ergas* was applying Florida law. *Id*. However, this is a distinction without a difference because federal law and Florida law are the same on this point. "Under

two separate issues, as well as the two-step process which the District Court ignored.

The binding decision of the Fifth Circuit in the *Moch* case makes clear that when one court issues a decision that is an adjudication on the merits, dismissal of another suit on the basis of *res judicata* is not an automatic process, but actually requires consideration of exogenous factors beyond the mere presence of an adjudication on the merits. *Moch v. East Baton Rouge Parish School Bd.*, 548 F.2d 594 (5th Cir.1977).[13] The *Moch* case began as a challenge to the constitutionality of a redistricting plan. *Id*, at 595. In the first filed action, the district court dismissed the action under Fed.R.Civ.P. 12(b)(6). *Id*, at 595-96. The plaintiffs then refiled their action, contending that an intervening change in Supreme Court precedent would require a different outcome. *Id*. The defendants again moved to dismiss, this time on the argument that the decision in the first suit was a judgment on the merits

---

Florida law, *res judicata* may apply only if there has been a prior adjudication 'on the merits.'" *Streicher v. U.S. Bank National Association*, 666 Fed.Appx. 844, 846 (11th Cir.2016). To repeat the essential and dispositive point, an "adjudication on the merits" is an essential condition for the application of *res judicata*. *Id*. This much is not disputed. But, standing alone, "an adjudication on the merits" is not the same as *res judicata* and is insufficient where application of *res judicata* would result in "manifest injustice." *Id*.

[13] "We hold that the decisions of the United States Court of Appeals for the Fifth Circuit (the 'former Fifth' or the 'old Fifth'), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit." *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir.1981).

and constituted *res judicata*. *Id*.

Just like Judge Altman in the present suit, the defendants argued that the dismissal of the first case on the basis of Fed.R.Civ.P. 12(b)(6), which was undoubtedly an adjudication on the merits, automatically required dismissal of the second suit. However, the Fifth Circuit explained that, even where a decision is reached on the merits, this does not automatically require dismissal on the basis of *res judicata*. Instead, a court must first consider exogenous factors. "We are unwilling to hold, however, that [*res judicata*] constitute[s] an absolute from which we must never stray, even when a mechanical application would result in manifest injustice. Rather, we believe that the occasional adoption of an exception to the finality rule when public policy so demands does not undermine its general effectiveness." *Id*, at 598. Therefore, the Fifth Circuit reversed the lower court decision and gave instructions that the district court must consider "whether the traditional application of *res judicata* principles would cause a manifest injustice." *Id*.

*See also*, *Ball v. Roar III, LLC*, 773 Fed.Appx. 546 (11th Cir.2019) (recognizing that, under Alabama law, "an adjudication on the merits" is only one element of *res judicata*), *Aning v. Federal National Mortgage Association*, 754 Fed.Appx. 816 (11th Cir.2018) (recognizing that, under Georgia law, "an adjudication on the merits" is only one element of *res judicata*), *McNear v. Wells*

*Fargo Bank, N.A.*, 651 Fed.Appx. 928 (11th Cir.2016) (recognizing that, under federal law, "an adjudication on the merits" is only one element of *res judicata*).

By conflating "an adjudication on the merits" with *res judicata*, Judge Altman below made the fatal mistake of thinking that satisfying the first was enough to satisfy the second. Or phrased another way, Judge Altman made the mistake of thinking that *res judicata* is a "strict liability" offense, in which the only factor is "an adjudication on the merits." However, this Court has said multiple times that an "adjudication on the merits" is only one element of *res judicata*, and has repeated on multiple occasions that the doctrine of *res judicata* should not be applied where it would result in "manifest injustice." *Miley v. Burns*, 2023 WL 4447021, p. 1 (11th Cir.2023), *Campbell v. Advanced Core Concepts LLC*, 2022 WL 31480 (11th Cir.2022), *Long v. Secretary, Department of Corrections*, 924 F.3d 1171 (11th Cir.2019), *Maldonado*, at 1375.

Instead of applying the legal rule of *res judicata*, along with the exceptions expressly recognized by this Court, Judge Altman deliberately ignored the doctrine of *res judicata* and mechanically applied only the express terms of Rule 41(a)(1)(B).

As will be shown in more depth below, the decisions from the Second Circuit and the Ninth Circuit which Judge Altman ignored perfectly illustrate the two-step process implicated when the two-dismissal rule is triggered; (1) establish that there has been "an adjudication on the merits" and (2) consider whether application of *res*

*judicata* would cause a "manifest injustice."

In *Poloron*, *infra*, the Second Circuit held that, notwithstanding the terms of Rule 41(a)(1)(B), the "order of the district court dismissing the amended complaint on *res judicata* grounds is reversed," and then remanded the matter back to the district court for further consideration of the legal rule of *res judicata*. *Poloron*, at 1018. In *TCW*, *infra*, notwithstanding the terms of Rule 41(a)(1)(B), the Ninth Circuit affirmed the district court's decision not to enforce the doctrine of *res judicata* where the facts triggered an exception to that legal doctrine. Both of these decisions perfectly illustrate the dispositive fault in Judge Altman's decision below, that Rule 41, standing alone, merely results in "an adjudication on the merits." But, under the strict terms of the rule, to which Judge Altman made a great show of fidelity[14], "an adjudication on the merits" is not enough to dismiss a third action. Only where an adjudication on the merits results in *res judicata* may a third action be dismissed. *Moch*, *supra*.

In the present matter, there is no dispute that the facts trigger the two-dismissal rule. As explained by the Southern District of Florida in *Ergas*, the application of Fed.R.Civ.P. 41(a)1)(B) means that the dismissal of GLI's first two declaratory

---

[14] Judge Altman even had the cheek to cite his own decision to further demonstrate his vernation for the written word. Dec Action #3, ECF no. 208, p. 10, *quoting*, *Torres v. Wal-Mart Stores East, L.P.*, 555 F.Supp.3d 1276, 1291 (S.D.Fla.2021) (J.Altman).

judgment actions "operates as an adjudication on the merits[.]" *Ergas*, at 1368.
*Sealey v. Branch Banking and Trust Company*, 693 Fed.Appx. 830, 834 (11th Cir.2017). However, an adjudication on the merits, standing alone, is not enough to bar GLI from filing its third suit. Judge Altman's reversible error was in holding that satisfaction of the two-dismissal rule under Fed.R.Civ.P. 41(a)(1)(B) is enough to bar GLI's third suit. This is obviously false. GLI's suit can only be barred if Judge Altman also considers whether *res judicata*, and its exceptions, should apply. This is what the Fifth Circuit commanded in *Moch*, because an "adjudication on the merits" can only create a bar where the doctrine of *res judicata* is also satisfied. By refusing to consider the doctrine of *res judicata*, and by refusing to consider the exception to that doctrine created specifically for the purpose of not allowing dishonest lawyer games, Judge Altman decision is based on an error of law and must be reversed.

### III.  *Res Judicata* Should Not Be Applied Here Because The Defendants Agreed to the First Dismissal

It is universally recognized that the primary purpose of the "two dismissal" rule is to prevent an unreasonable use of the plaintiff's unilateral right to dismiss an action prior to the filing of the defendant's responsive pleading. *See, e.g. Axon Enter. Inc. v. Vievu LLC*, No. CV-17-01632-PHX-DLR, 2018 WL 317289, at *6 (D. Ariz. Jan. 5, 2018) (stating that the rationale behind the two-dismissal rule is to "prevent delays and harassment caused by plaintiffs securing numerous dismissals

without prejudice.") (quoting 9 C. Wright & A. Miller, Federal Practice & Procedure

§ 2368 (3d ed.)); *Sealey v. Branch Banking & Tr. Co.*, 693 Fed.Appx. 830, 834 (11th

Cir. 2017); *ASX Inv. Corp. v. Newton*, 183 F.3d 1265, 1268 (11th Cir.1999); *Lake at*

*Las Vegas Invs. Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 727 (9th

Cir.1991); *Island Stevedoring, Inc. v. Barge CCBI*, 129 F.R.D. 430, 432

(D.P.R.1990). *Poloron Prod., Inc. v. Lybrand Ross Bros. & Montgomery*, 534 F.2d

1012, 1017 (2d Cir. 1976); *Engelhardt v. Bell & Howell Company*, 299 F.2d 480,

481-82 (8th Cir.1962).

After all, "[t]he basic purpose of the Federal Rules is to administer justice

through fair trials, not through summary dismissals as necessary as they may be on

occasion." *Surowitz v. Hilton Hotels Corp*., 383 U.S. 363, 373, 86 S.Ct. 845, 851,

15 L.Ed.2d 807, 814 (1966).

"The 'two dismissal' rule is an exception to the general principle, contained

in Rule 41(a)(1) and honored in equity prior to the adoption of the Federal Rules,

that a voluntary dismissal of an action does not bar a new suit based upon the same

claim. Where the purpose behind the 'two dismissal' exception would not appear to

be served by its literal application, and where that application's effect would be to

close the courthouse doors to an otherwise proper litigant, a court should be most

careful not to construe or apply the exception too broadly. *Poloron*, 534 F.2d at

1017 (internal citations omitted). Put simply, it is contradictory to the whole point

of the Federal Rules of Civil Procedure to apply those rules in a way that is "manifestly unjust."

*See also Priestly v. Comrie*, No. 07 CV 1361 (HB), 2007 WL 4208592, at *4 (S.D.N.Y. Nov. 27, 2007) (declining to apply two-dismissal rule where second dismissal was by stipulation, stating "applying the 'two dismissal rule' here would contravene the intended narrow scope of the rule."); *In re Chi-Chi's, Inc.*, 338 B.R. 618, 625 (Bankr. D. Del. 2006) ("the two dismissal rule is a statutory rule that has been strictly construed," declining to apply it where "[t]here has been no allegation or indication from the record that [the plaintiff's] actions have been taken in bad faith to harass [the defendant], or to otherwise abuse the judicial system.") The undersigned urges that the two-dismissal rule be similarly strictly construed as not applicable to the facts of this case because it is undisputed that the first dismissal was done with the agreement of the Defendants and because there is no disputing the finding of the District Court in Montana that counsel for the CRABTREES is engaged in gamesmanship. Dec Action #3, ECF no. 20, p. 3.

The *Poloron* case is directly on point and procedurally identical. *Poloron* arose out of assurances by a public accounting firm as to the accuracy of the balance sheets of a company that was for sale. *Poloron*, at 1014. When a dispute inevitably arose, the buyer sued the accounting firm in the Northern District of Indiana. *Id.* But, for reasons having to do with the assignment of rights, this suit was dismissed

by stipulation of the parties. *Id*. Next, the buyer filed a second suit against the accounting firm in the same court. But, due to an intervening Supreme Court decision, the possibility arose that the buyer's claims might be barred by Illinois's three-year statute of limitations applicable to securities actions, not Illinois's five-year statute of limitations applicable to general fraud cases. *Id*. Therefore, the buyer voluntarily dismissed the second action and refiled in the Southern District of New York, where the claims would certainly not be time barred. *Id*, at 1015.

The accounting firm moved to dismiss based on the "two dismissal rule" and the district court granted the motion. Exactly like Judge Altman in Dec Action #3, the district court in *Poloron* insisted that it had to read Fed.R.Civ.P. 41(a)(1)(B) literally, and that since the rule contained no express exception, there must be no exception. *Id*, at 1017. On appeal, the Second Circuit held that the district court's decision was incorrect and had to be reversed. The Second Circuit started it critique by saying that "it is universally recognized that the primary purpose of the 'two dismissal' rule is to prevent an unreasonable use of the plaintiff's unilateral right to dismiss an action prior to the filing of the defendant's responsive pleading[,]" but that the purpose of the rule is nullified when one of the dismissals is by stipulation. *Id*. Second, the court wrote that the purpose of Fed.R.Civ.P. 41(a)(1)(B) would not "be served by it literal application, and where the application's effect would be to close the courthouse doors to an otherwise proper litigant[.]" *Id*.

Similarly, in *TCW Special Credits v. Fishing Vessel Chloe Z*, the Ninth Circuit elected not to apply the rule where the prior dismissals were by private agreement but not formal stipulation. 238 F.3d 431 (Table), 2000 WL 1277922, at *2 (9th Cir. Oct. 3, 2000). In *TCW*, "the record indicate[d] that the [prior] dismissal was preceded by discussions between the parties" in which "all parties tacitly agreed to the dismissal [in Hawaii] in favor of litigating the action in Guam." *Id.* Based on the circumstances presented, the court concluded that strict application of the two-dismissal rule was not warranted. *Id.* The court based its decision on the fact that, just like in the present matter, one of the dismissals was preceded by discussions between the parties to move the same case to another forum. Although that dismissal was not formally "stipulated," the court stated that it was not unilateral. *Id.* "Also, there [was] no evidence that the filings and dismissals were part of a strategy to harass." *Id.* Accordingly, the court affirmed the district court's decision not to dismiss the action on *res judicata* grounds. *Id.*

When faced with similar factual circumstances, i.e., where one or both dismissals was done with the agreement of the defendant, every court to have considered the issue has declined to literally apply the two-dismissal rule. *See e.g.*, *Axon*, *7 ("There appears to have been a tacit agreement or understanding between counsel before Plaintiff voluntarily dismissed its prior actions"); *Sheet Metal Workers' Nat. Pension Fund Bd. of Trs. v. Courtad, Inc.*, No. 5:12-cv-2738, 2013

WL 3893556, at *5 (N.D. Ohio July 26, 2013) ("not only is there no evidence that the [plaintiff] dismissed either of the previous actions out of the desire to harass defendant, the evidence actually shows, to the contrary that the dismissal occurred after the parties conferred ... [therefore] this would not be a proper occasion to invoke the 'two dismissal' rule"); *Logan Proffitt Irrevocable Trust v. Mathers*, 2011 WL 9369856 (E.D. Tenn. 2011) (holding the two-dismissal rule was inapplicable because the first dismissal was done through a tacit agreement of the parties); *Ater ex rel. Ater v. Follrod*, 238 F. Supp. 2d 928, 953 (S.D. Ohio 2002) ("Even though the Court has found no basis for believing that the parties reached an "agreement" or that there was an "implied understanding" concerning whether dismissal ... would trigger application of the [two] dismissal rule, the fact remains that Plaintiffs' counsel did confer with Defendants' counsel prior to dismissing the claim.... [T]he dismissals were not completely unilateral, and there is no evidence in the record that Plaintiffs acted with the intent of harassing Defendants," and therefore the two-dismissal rule did not apply); *Rogers v. DaimlerChrysler Corp.*, No. 3:07 CV 395, 2007 WL 2746914, at *5 (N.D. Ohio Sept. 19, 2007) ("In this instance, the dismissals… were both with consent from the Defendant rendering the two dismissal rule inapplicable to this litigation."); *Island Stevedoring, Inc. v. Barge CCBI*, 129 F.R.D. 430, 432 (D.P.R. 1990) (although the parties did not file a formal stipulation,

the record indicated that the first dismissal resulted from "negotiations and a consent agreement among the parties," so the "two-dismissal" rule did not apply).

One published case in the Southern District of Florida has explicitly so held, wherein the court stated: "***It is clear that the two dismissal rule does not apply where the defendant consents to one or more of the voluntary dismissals***." *Ergas*, at 1371 (citing *Poloron*, among other cases) (emphasis added). In the *Ergas* case, the defendant failed to raise the two-dismissal argument for 10 years, which the court considered to be a demonstration of the defendant's "tacit consent" to the prior dismissals. *Id.* Unlike the defendant in *Ergas*, the present Appellees' agreement to the first dismissal was anything but tacit, as discussed above and shown in the e-mail exchanges between counsel. The Appellees' first motion to dismiss did not even mention the two-dismissal rule, demonstrating their acquiescence. Dec Action #3, ECF no. 11. It was not until their reply in support of their motion to dismiss that they even mentioned the two-dismissal rule. Dec Action #3, ECF no. 17, p. 5 ("The fact that Plaintiff voluntarily dismissed two times in federal court equates an adjudication on the merits of the claim, barring this improper third attempt at litigation.")

Where courts did find that the two-dismissal rule applied, some only did so after explicitly recognizing that both dismissals were unilateral, or where there was no evidence that one or both prior dismissals were done with the agreement of

defendant's counsel, indicating that they would have ruled differently had the facts been similar to the instant case. *See, e.g., Harris v. Hill*, No. CV619-097, 2021 WL 3729992, at *5 (S.D. Ga. July 30, 2021), *report and recommendation adopted*, No. CV619-097, 2021 WL 3729973 (S.D. Ga. Aug. 23, 2021) ("It is uncontested that Harris voluntarily dismissed his two prior lawsuits against Hill, and that both of those dismissals were unilateral and voluntary."); *Solid 21, Inc. v. Ulysse Nardin, USA Inc.*, No. 19-CV-80474, 2019 WL 7933684, at *4 (S.D. Fla. Dec. 12, 2019) (recognizing that although the plaintiff had made an agreement with one defendant, the other defendant "was not a party to this agreement and there is no affirmative indication from [the other defendant] that they knew of the tolling agreement."); *Cabot Golf CL-PP 1, LLC v. Cabot Golf CL-PP Acquisition, LLC*, No. 5:12CV39, 2013 WL 3927861, at *7 (E.D. Tex. July 25, 2013) ("there is no evidence there was ever any agreement with Defendants" to either of the prior dismissals), *aff'd sub nom. Cabot Golf CL-PP 1, LLC v. Nixon Peabody, LLP*, 575 Fed.Appx. 216 (5th Cir. 2014); *Lake at Las Vegas Invs. Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 727 (9th Cir. 1991) (recognizing that the holding of *Poloron* "when followed, has been limited to its facts and does not preclude application of the bar where the voluntary dismissal is unilateral."); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Randall*, 110 F.R.D. 499, 500 (E.D. Cal. 1986) ("Neither of the [plaintiff]'s voluntary dismissals were by stipulation. The court has found no case mitigating the

effect of Rule 41(a)(1) in a case where there have been two successive unilateral

voluntary dismissals.")

Although not directly on point, the *ASX* case demonstrates that this Court has

already expressed its willingness to align itself with the Second and the Ninth

Circuits (and likely the Seventh Circuit as well, as discussed more fully below) and

find that the two-dismissal rule is not implicated where one or both prior dismissals

was done with the agreement of the defendant. *See* 183 F.3d 1265, 1268 (11th Cir.

1999). In *ASX*, the plaintiff brought a third action in federal court against the same

defendants involving the same claims, after having already previously dismissed one

state court and one federal court action, both by plaintiff's own motion. *Id.*, at 1266.

The district court dismissed the third action per the two-dismissal rule, and the

plaintiff appealed, arguing that the dismissal of the state court case was by motion

and order of the court, and therefore did not qualify as a first dismissal under the

two-dismissal rule. *Id.*, at 1267. The Eleventh Circuit agreed with the plaintiff, and

held that the dismissal had actually been done by the court (albeit on the plaintiff's

motion), and therefore did not implicate the two-dismissal rule. *Id.*, at 1268. This

court wrote:

> Although not pivotal to our analysis, our conclusion is further
> supported by consideration of the purpose of the Rule 41(a)(1) two
> dismissal rule. "[T]he primary purpose of the 'two dismissal' rule is to
> prevent an unreasonable use of the plaintiff's unilateral right to dismiss
> an action prior to the filing of the defendant's responsive pleading."
> *Poloron Products, Inc.*, 534 F.2d at 1017 (citations omitted); *see also*

*American Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963) ("The reason for this arbitrary limitation [set out in the two-dismissal rule] ... is to prevent unreasonable abuse and harassment."). A dismissal obtained by motion and order of the court under Rule 41(a)(2) or similar state rule is ***not unilateral and does not pose the same danger of abuse or harassment as does a Rule 41(a)(1) dismissal by plaintiff's notice***. *Id* [emphasis added].

In favorably citing the Second Circuit's decision in *Poloron*, and stating that a dismissal which is "not unilateral […] does not pose the same danger of abuse or harassment," it is clear that, confronted now with the circumstances of this case, should join with the Second and Ninth Circuits in holding that a prior dismissal which had been agreed to by the defendant does not count as a dismissal for purposes of the two-dismissal rule. *See id.*

In the face of all of this, Judge Altman could not find a single case where any court elected to ignore the requirement of *res judicata* when one of the dismissals was by stipulation between the parties. Making a great show of his fidelity to the words of Fed.R.Civ.P. 41(a)(1)(B), but deliberately ignoring the requirements of *res judicata*, Judge Altman made the deliberate decision to reward opposing counsel's dishonesty and gamesmanship. Judge Altman quoted some nice language from unrelated cases ("a judge's job is to get it right"), but could not find a single instance in which any other court mechanically applied the two dismissal rule where one of the dismissals was by stipulation between the parties. *Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Development Corp.*, 933 F.2d 724 (9th Cir.1991) (both

dismissals were unilateral), *Kerr Corp. v. Westside Resources, Inc.*, 2007 WL 5613512 (W.D.Wisc.2007) (both dismissals were unilateral).

Nor could the CRABTREES cite a single example in which a court enforced the two dismissal rule where one of the dismissals was by formal stipulation. For example, the first of the only three cases relied on by the CRABTREES was *Sutton Place Development Co. v. Abacus Mortg. Inv. Co.*, 826 F.2d 637, 8 Fed. R. Serv. 3d 887 (7th Cir. 1987), ECF No. 194, p. 8. *Sutton Place* is not factually analogous to the present matter because the second dismissal was made by motion, and the defendant argued that the two-dismissal rule (itself an exception to the typical rule that a plaintiff's voluntary dismissal is without prejudice) should apply. *Id*, at 640. The Seventh Circuit rejected the defendant's argument and declined to apply the rule, stating that a court "should be especially careful not to extend the scope of such a narrow exception ***when the purpose for the exception would not be served***." *Id*, at 640 [emphasis added], *citing*, *Poloron*. The Seventh Circuit went on to state that the two-dismissal rule's purpose would not be served by its application in that instance because "[t]he record makes it quite clear that dismissal of the [second suit] was sought only after the matter had been discussed fully before the bankruptcy judge and opposing counsel. It was clear to all that [plaintiff] was seeking dismissal of the [second suit]—not to harass [the defendant] but to consolidate its… litigation. *Id*, at 640–41. Thus it is clear that the Seventh Circuit would likely agree with the

Second and Ninth Circuits and hold that the two-dismissal rule does not apply where one or both dismissals was by agreement, *i.e.*, where the purpose of the rule would not be served by its application.

The second case, *Sealey* is straightforward and equally irrelevant to the present matter: the plaintiff homeowner, proceeding *pro se*, had twice voluntarily dismissed the same lawsuit against the bank, seeking to stop the foreclosure of his home, first against the bank and four of the bank's employees. *Sealey v. Branch Banking & Tr. Co.*, 693 Fed.Appx. 830, 831-32 (11th Cir.2017), ECF No. 194, pp. 14-16. The plaintiff voluntarily dismissed the first action as to the individual employees, and the court ordered the dismissal of the remaining claims against the bank. *Id.*, at 833. The plaintiff then filed a second lawsuit, against just the bank's employees, which the plaintiff also voluntarily dismissed. *Id.* Then the plaintiff brought a third suit, this time against just the bank. *Id*. All three suits involved basically identical claims. *Id.* On a motion to dismiss by the bank, the district court found that the third suit was barred by the doctrine of claim preclusion, because the two prior unilateral dismissals operated as an adjudication on the merits where the bank and the bank's employees were in privity, and thus involved the same parties. *Id*, at 834. On appeal, the Eleventh Circuit affirmed the district court's ruling, stating it was "consistent with the goal of preventing unreasonable abuse of the plaintiff's **_unilateral_** right to dismiss an action." *Id* [emphasis added], *citing*, *ASX Inv. Corp.*

*v. Newton*, 183 F.3d 1265, 1268 (11th Cir. 1999). The *Sealey* case presents an entirely different fact pattern from the one presented in this case: in *Sealey*, a disgruntled homeowner proceeding *pro se* filed one lawsuit after another, and each time dismissing them unilaterally. *Id.*

The last of the three cases relied on by the CRABTREES was *Solid 21, Inc. v. Ulysse Nardin, USA Inc.*, 2019 WL 7933684 (S.D.Fla.2019), ECF No. 194, at 5, 14, and 15. However, the facts of *Solid 21* indicate it is unlikely that Defendants' counsel even read the case, much less understood its import. In *Solid 21*, the plaintiff had filed a patent infringement case against two defendants, Ulysse Nardin, Inc.'s ("UNI") and Ulysse Nardin SA's ("UNSA"). *Id.*, at p. 1. The plaintiff dismissed the first case unilaterally. *Id.* Sometime later, the plaintiff filed a second identical action against the same Defendants, UNI and UNSA. *Id.* Before it dismissed the second action, the plaintiff "and Defendant UNI—***but not Defendant UNSA***—entered into a 'tolling agreement'" pending the outcome of another patent infringement case. *Id* [emphasis in original]. After that other patent infringement case resolved, the plaintiff filed a third action against the same Defendants, UNI and UNSA. *Id*, at p. 2. But only one defendant, UNSA, moved to dismiss based on the plaintiff's two prior dismissals. *Id.* The court ultimately granted UNSA's motion to dismiss, stating:

> Defendant UNI was in communication with Plaintiff regarding these
> dismissals and ultimately entered into the above described tolling

agreement with Plaintiff. However, Defendant UNSA was not a party to this agreement and there is no affirmative indication from UNSA that they knew of the tolling agreement.

*Id*, at p. 4.

The court's reasoning in dismissing UNSA indicates that its holding was based, at least in part, on the explicit recognition that UNSA had ***not*** been a party to or even known of the dismissal discussions going on between the plaintiff and the other defendant, UNI. *Id*. The facts of the present case make the CRABTREES totally unlike UNSA, because the CRABTREES have admitted on the record that they agreed to the dismissal of the first action. Furthermore, GLI presented Judge Altman with undisputed evidence, in the form of email communications between counsel, showing that the CRABTREES' counsel urged the undersigned to dismiss the first action on the understanding that the CRABTREES would answer the complaint filed in the Southern District of Florida. If it would have been unjust to hold UNSA to an agreement that it was not a party to, as the *Solid 21* holding suggests, then it would also be unjust to allow the Defendants to invoke the two-dismissal rule where they explicitly agreed to the prior dismissal.

Furthermore, the undersigned could not locate a single case where a federal court, at the district or appellate level, strictly applied the two-dismissal rule in the face of evidence that the parties had agreed to one of the prior dismissals, as occurred in this case. Nor could the undersigned counsel locate a single case in which a

federal court, at the district or appellate level, enforced the two-dismissal rule after specifically finding that the defendant was engaged in gamesmanship.

Applying these precedents here, the first vital thing to note is that due to the declaratory judgment remedy (28 USC §2201, *et seq*), GLI never had a unilateral right to file and dismiss multiple suits. *Poloron*, at 1017. Both parties, GLI and the CRABTREES, have the bilateral right to file suit, as proven by the fact that the CRABTREES breached the forum selection clause and filed their breach of contract action in the Florida state court. It makes no sense to apply the two dismissal rule against GLI when GLI does not have the unilateral right to file and dismiss multiple suits. Second, precisely because GLI never had a unilateral right to file suit, it was the CRABTREES that abused the dismissal of Dec Action #1 to file an action in the Florida state court which was expressly barred by the Policy's forum selection clause. Third, the undisputed evidence is that GLI is absolutely not using its declaratory judgments to harass the CRABTREES. Dec Action #1 was filed in Montana because that was the address printed on the declarations page of the Policy and because that was required by the terms of the Policy's forum selection clause. Dec Action #1 was voluntarily dismissed precisely to accommodate the CRABTREES and make litigation more convenient for both parties. Fourth, there is no purpose whatsoever in rewarding the CRABTREES's gamesmanship. The whole *raison d'être* of the federal rules "is to administer justice through fair trials,

not through summary dismissals as necessary as they may be on occasion." *TCW*, *supra*, *quoting*, *Surowitz v. Hilton Hotels, Corp.*, 383 U.S. 363, 373 (1966). Finally, it would be "manifestly unjust" to punish GLI when the District Court in Montana has already found that it is the CRABTREES, and not GLI, that is engaged in gamesmanship. To affirm Judge Altman in the present case would be to give the CRABTREES a victory on the merits of the insurance coverage dispute as a reward for their attorney's dishonesty.

## IV.     The Law of the Case Doctrine

When the District Court in Montana previously ruled on this issue and held that the two-dismissal rule did not bar GLI's refiled suit due to the CRABTREES' counsel's "gamesmanship," those findings of fact and conclusions of law became the law of the case. Because the CRABTREES' Reply in Support of their Motion to Dismiss [ECF no. 17] and GLI's Sur-Reply [ECF no. 19] referenced matters outside the pleadings, *i.e.*, the history of the prior dismissals, the CRABTREES' Motion to Dismiss should be considered a motion for summary judgment. *See, e.g., Manze v. State Farm Ins. Co.,* 817 F.2d 1062, 1066 (3d Cir. 1987) (a Rule 12(b)(6) motion may be treated as one for summary judgment for Rule 41(a)(l)(i) purposes); *Exxon Corp. v. Maryland Casualty Co.,* 599 F.2d 659, 661 (5th Cir.1979) (same); *Bangor Baptist Church v. Maine, Dep't of Educ. and Cultural Services,* 92 F.R.D. 123, 124 (D.Me.1981) (same). A determination by summary judgment under

Federal Rule 56 is as final as that had after a trial or hearing on uncontroverted facts.

Fed.R.Civ.P. 56.

Under the law-of-the-case doctrine, an issue decided at one stage of a case is binding at later stages of the same case. *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1313 (11th Cir. 2000), *citing*, *United States v. Escobar–Urrego,* 110 F.3d 1556 (11th Cir.1997)):

> As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.... Law of the case directs a court's discretion, it does not limit the tribunal's power.

*Shute v. Carnival Cruise Lines, Inc.*, 804 F.Supp. 1525, 1527 (S.D. Fla. 1992) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983) (citations omitted). The fact that the case was transferred to the Southern District of Florida does not diminish the effect of that prior ruling. "A prior ruling of a transferor court… may be reconsidered when the governing law has been changed by the subsequent decision of a higher court, when new evidence becomes available, when clear error has been committed or to prevent manifest injustice." *Id*. Although a trial court has the power to revisit prior decisions of its own or of a transferee court at the same stage of litigation, "as a rule courts should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Id*. The decision of the District Court in Montana, which fully considered the exact same facts and argument, was neither "clearly

erroneous," nor did it work a "manifest injustice;" to the contrary, it would be a manifest injustice if Judge Altman's reversal were allowed to stand.

### V.    **Potential For Malpractice**

Finally, affirming Judge Altman's decision below will do more than merely reward opposing counsel's dishonesty.  But far worse, if only from the admittedly personal perspective of the undersigned counsel for the Appellant, affirming Judge Altman's ill-founded ruling bears the distinct possibility of exposing the undersigned counsel for Appellant to a potential malpractice claim.  Perhaps it is for this reason that the undersigned counsel cannot fully appreciate the humor in Judge Altman's jocular reference to his otherwise somewhat obscure claim that "two plus nine doesn't *always* equal eleven."  ECF no. 208, p. 10.  Upon reflection, Judge Altman's meaning is not obscure.  He means that although he is fully cognizant of the fact that there exist clear and unassailable authorities from the Second Circuit and the Ninth Circuit, he will not be influenced and by these cases from the far-away metropolises of New York and California, as if these were foreign jurisdictions.  Nor will be influenced by the ruling of Judge Hoeveler in the *Ergas* case from 2002.  Judge Altman's Order dismissing GLI's declaratory judgment action, if left standing, would have the pernicious effect of rewarding the "gamesmanship" (Judge's Altman's word) that brought the issue before him for review in the first place, while penalizing the undersigned counsel who was misled by opposing counsel's antics

and who at all times relied upon recognized and well established caselaw out of two federal circuit courts as well as a case out of the Southern District of Florida. It is respectfully submitted that simple justice demands reversing Judge Altman's Order.

## CONCLUSION

The purposes of *res judicata* are "to (a) protect the defendant's interest in avoiding the burdens of twice defending a suit; and (b) to avoid unnecessary judicial waste." *Ergas*, at 1371, *citing*, *Arizona v. California*, 530 U.S. 392 (2000) (holding that in some circumstances it is appropriate for the Court to raise res judicata *sua sponte*), *Solid 21*, at 3 ("*Res judicata* is founded on the principle that a full and fair opportunity to litigate protects a party's adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."), *citing*, *McCulley v. Bank of Am., N.A.*, 605 Fed.Appx. 875, 877 (11th Cir.2015). The purposes of *res judicata* would not be served in this instance, where it is clear that any burden to the CRABTREES is solely due to their own vexatious and deceitful tactics and attempts at forum shopping. Moreover, it would be "manifestly unjust" to punish GLI for opposing counsel's dishonesty.

The District Court in Montana found unequivocally that the CRABTREES and their attorney are engaged in the sort of gamesmanship that federal courts are always saying that they deplore. *Ener v. Martin*, 987 F.3d 1328, 1332 (11th

Cir.2021), *Davis v. White*, 795 Fed.Appx. 764, 769 (11th Cir.2020), *Goodwin v.*

*Reynolds*, 757 F.3d 1216, 1221 (11th Cir.2014), *U.S. v. Davila*, 749 F.3d 982, 997

(11th Cir.2014). Even Judge Altman claims to be against gamesmanship. *Torres*,

at 1300 ("We won't reward Wal-Mart's 'gamesmanship' with an easy win.")[15]

However, rewarding gamesmanship is exactly what Judge Altman did in the present

case.

Presented with obvious dishonesty by opposing counsel, flagrant disregard of

the basic elements of the doctrine of *res judicata* by Judge Altman, and the "manifest

injustice" of punishing GLI for the CRABTREES' gamesmanship, the proper

response from this Court is reverse the District Court's decision and issue the

following order to Judge Altman:

1.  Take this matter seriously;

2.  Properly consider the established exceptions to *res judicata*;

3.  Punish the CRABTREES, and not GLI, for the CRABTREES'
    gamesmanship.

---

[15] Presumably, Walmart's "gamesmanship" didn't give Judge Altman a chuckle.

Dated:      October 2, 2023

THE GOLDMAN MARITIME LAW GROUP
Attorneys for Plaintiff/Appellee
233 Harvard St., Suite 211
Brookline, MA 02446
Tel – (617)566-4200
Fax – (617)566-4292
Cel – (617)671-8657

By: /s/ Michael Isaac Goldman
MICHAEL I. GOLDMAN, ESQ.
MA. BAR NO. 677362

By: /s/ Jacqueline L. Goldman
JACQUELINE L. GOLDMAN
FLA. BAR. NO. 1005573

**Great Lakes Insurance SE v. Brian Crabtree Et Al.**
**DOCKET NO. 23-12020**

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on June 27, 2023 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record.

MICHAEL I. GOLDMAN, ESQ.
The Goldman Maritime Law Group
233 Harvard Street, Suite 211
Brookline, MA 02446
Cel (617)671-8675
Fax (617)566-4292
Em michael@goldmanmaritime.com

By:   /s/ Michael I. Goldman
MICHAEL I. GOLDMAN
MA Bar No. 677362

<u>**CERTIFICATE OF COMPLIANCE**</u>

This filing complies with the type-volume limitation of F.R.A.P. 27 and F.R.A.P. 32 because this filing contains four-thousand eight-hundred sixty-one (4,861) words.

MICHAEL I. GOLDMAN, ESQ.
The Goldman Maritime Law Group
233 Harvard Street, Suite 211
Brookline, MA 02446
Cel (617)671-8675
Fax (617)566-4292
Em michael@goldmanmaritime.com

By:   /s/ Michael I. Goldman
MICHAEL I. GOLDMAN
MA Bar No. 677362