IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO. 23-12020

GREAT LAKES INSURANCE SE.,

      Plaintiff-Appellant,

vs.

BRIAN CRABTREE AND BETHEA
CRABTREE,

      Defendants-Appellees.

_____/

Appeal from the U.S. District Court, Southern District of Florida
Case No. 9:20-cv-81544

**BRIEF OF APPELLEES**

DAVID B. PAKULA, ESQ., B.C.S.     DAVID A. NEBLETT, ESQ., B.C.S.
DAVID B. PAKULA, P.A.         PERRY & NEBLETT, P.A.
12301 Taft Street, Suite 200     2550 S. Bayshore Drive, Suite 11
Pembroke Pines, FL 33026      Miami, FL 33133
Tel.: (954) 217-5123          Tel: (305) 856-8408
Email: david@pakulalawfirm.com  David@perryneblett.com
info@pakulalawfirm.com       jmahaffey@perryneblett.com
                        tlevy@perryneblett.com

Attorneys for Defendants-Appellees

## <u>CERTIFICATE OF INTERESTED PERSONS & CORPORATE DISCLOSURE STATEMENT</u>

The undersigned, counsel of record, certifies that the following listed persons may have an interest in the outcome of this case.

<u>PARTIES</u>

Great Lakes Insurance, SE, plaintiff/appellant

Brian Crabtree and Bethea Crabtree, defendants/appellees

<u>JUDGES</u>

The Honorable Roy K. Altman - U.S District Court Judge (U.S.D.C., S.D.Fla.)

<u>ATTORNEYS</u>

David B. Pakula and David B. Pakula, P.A., appellate counsel for defendants-appellees

David A. Neblett and Perry & Neblett, P.A., trial counsel and appellate co-counsel for defendants-appellees

## **STATEMENT REGARDING ORAL ARGUMENT**

This appeal involves a unique fact pattern and possibly an issue of first impression in this court. However, while we are not opposed to oral argument, we believe the record and the applicable law speak for themselves, and that the court will be able to evaluate the issues without the need for oral argument.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ............................................. C-1 of 1

STATEMENT REGARDING ORAL ARGUMENT ...................................................i

TABLE OF CONTENTS............................................................................................ ii

TABLE OF CITATIONS ........................................................................................iv

STATEMENT OF THE ISSUES..............................................................................1

STATEMENT OF THE CASE AND FACTS ..........................................................2

STANDARD OF REVIEW ....................................................................................11

SUMMARY OF THE ARGUMENT .....................................................................12

ARGUMENT ..........................................................................................................13

The District Court Correctly Refused to Apply a Judically-
Engrafted Exception to the Two-Dismissal Rule..................................………..13

1. A Non-Unilateral Dismissal Exception Contravenes the
Plain Text of Rule 41(a)(1)(B) ………..………………….13

2. In Any Event, the Exception Should Not Be Applied Here
Because GLI Abused the Right of Voluntary Dismissal
Without Prejudice ………………….………………..18

3. GLI's Contentions Concerning a "Manifest Injustice"
Exception to Res Judicata, Raised For the First Time on
Appeal, Are Without Merit …………………….....…..22

4. The District Court Acted Within Its Discretion In
Reconsidering the Predecessor Court's Procedurally
Flawed, Erroneous Ruling on the Two-Dismissal Rule …24

CONCLUSION ...................................................................................................27

CERTIFICATE OF SERVICE ...........................................................................28

CERTIFICATE OF COMPLIANCE …………………………………………..28

# TABLE OF CITATIONS

## Cases

ASX Inv. Corp. v. Newton,
183 F. 3d 1265 (11th Cir. 1999) …………………………………………..17

Bus Guides, Inc. v. Chromatic Communs. Enters.,
498 U.S. 533 (1991) ………………………………………………………...15

Cabot Golf CL-PP1, LLC v. Nixon Peabody, LLP,
575 Fed. Appx. 216 (5th Cir. 2014) …………………………………………16-17

Citibank, N.A. v. Data Lease Financial Corp.,
904 F. 2d 1498 (11th Cir. 1990) ………………………………………………..23

Dietz v. Bouldin,
579 U.S. 40 (2016) ……………………………………………………………..25

Douglas Asphalt Co. v. QORE, Inc.,
657 F. 3d 1146 (11th Cir. 2011) ………………………………………………..25

Fagan v. City of Vineland,
22 F. 3d 1283 (3rd Cir. 1994) …………………………………………..12, 26

Federated Department Stores, Inc. v. Moitie,
452 U.S. 394 (1981) …………………………………………………………..23

Finnegan v. Comm'r,
926 F. 3d 1261 (11th Cir. 2019) ………………………………………………..23

Griswold v. County of Hillsborough,
598 F. 3d 1289 (11th Cir. 2010) ………………………………………………..23

Harper v. Lawrence County,
592 F. 3d 1227 (11th Cir. 2010) …………………………………………..12, 25

Heiser v. Woodruff,
327 U.S. 726 (1946) …………………………………………………………..23

Helvering v. Gowran,
    302 U.S. 238 (1937) …………………………………………………..19-20

Hemispherx Biopharma v. Johannesburg Consol. Invs.,
    553 F. 3d 1351 (11th Cir. 2008) …………………………………………11

Kerr Corp. v. Westside Res., Inc.,
    2007 U.S. Dist. LEXIS 72862 (W.D. Wisc. 2007),
    aff'd, 273 Fed. Appx. 944 (Fed. Cir. 2008) ………………………………17

Klopfenstein v. Deutsch Bank Sec., Inc.,
    592 Fed. Appx. 812 (11th Cir. 2014) ………………………………………25

Lake at Las Vegas Investors Group v. Pacific Malibu Dev. Corp.,
    933 F. 2d 724 (9th Cir. 1991),
    cert. denied, 503 U.S. 920 (1992) …………………………………………..14

Lanier v. Carbone Props. of Mobile, LLC,
    253 Fed. Appx. 861 (11th Cir. 2007) ………………………………………..25

Menke v. Monchecourt,
    17 F. 3d 1007 (7th Cir. 1994) ………………………………………………16

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
    460 U.S. 1 (1983) ……………………………………………………………..25

Poloron Products, Inc. v. Lybrand Ross Bros. & Montgomery,
    534 F. 2d 1012 (2nd Cir. 1976) …………………………………14, 15, 18, 22

Rogers v. Lourain,
    113 F. 3d 595 (6th Cir. 1997) ………………………………………………..16

Sargeant v. Hall,
    951 F. 3d 1280 (11th Cir. 2020) …………………………………………14, 15

SEC v. Chenery Corp.,
    318 U.S. 80 (1943) ……………………………………………………………..19

Sutton Place Dev. Co. v. Abacus Mortgage Inv. Co.,
    826 F. 2d 637 (7th Cir. 1987),
    cert. denied, 485 U.S, 961 (1988) ……………………………………………17

TCW Special Credits v. Fishing Vessel Chloe Z,
    2000 U.S. App. LEXIS 23213 (9th Cir. 2000) …………………………15, 18

United States v. Campbell,
    26 F. 4th 860 (11th Cir.),
    cert. denied, 143 S. Ct. 95 (2022) …………………………………………..19

United States ex rel. Esenstein v. City of New York,'
    540 F. 3d 94 (2nd Cir. 2008),
    aff'd, 556 U.S. 928 (2009) ……..…………………………………………15-16

United States v. Gonzalez,
    71 F. 4th 881 (11th Cir. 2023),
    cert. denied, 144 S. Ct. 552 (2024) ………………………………………….22

Williams v. Bexar County,
    2000 U.S. App. LEXIS 39928 (5th Cir. 2000) ……………………………12, 26

## Other Authorities

Fed. R. Civ. P. 41(a)(1)(B) ……………………………………………1, 12, 13, 22

Fed. R. Civ. P. 54(b) …………………………………………………………….25

Fed. R. Civ. P. 56 ……………………………………………………………….25

## **STATEMENT OF THE ISSUES**

Whether the District Court correctly refused to apply a judicially-engrafted exception to the two-dismissal rule.

1. Whether a non-unilateral dismissal exception contravenes the plain text of Rule 41(a)(1)(B).

2. Whether, in any event, the exception should not be applied here because GLI abused the right of voluntary dismissal without prejudice.

3. Whether GLI's contentions concerning a "manifest injustice" exception to res judicata, raised for the first time on appeal, are without merit.

4. Whether the District Court acted within its discretion in reconsidering the predecessor court's procedurally flawed, erroneous ruling on the two-dismissal rule.

## STATEMENT OF THE CASE AND FACTS

Great Lakes Insurance SE ("GLI") appeals from a non-final summary judgment finding that its declaratory action on insurance coverage against its insureds, Bryan Crabtree and Bethea Crabtree, is precluded by operation of the so-called "two-dismissal rule." The rule, set forth in Fed. R. Civ. P. 41(a)(1)(B), provides that a second voluntary dismissal of the same claim operates as an adjudication on the merits. Here are the relevant facts and at times bizarre procedural history of this case.

The Crabtrees owned the S/V Brandison, a 43-foot catamaran. (M2.34-2)[1] In April 2019, they applied to GLI for marine insurance coverage for the vessel. (A.310; M2.38-3; A.28-31; M.1.DE.1-ex.A). On April 23, 2019, GLI issued insurance coverage for the vessel in the amount of $250,000 in hull coverage, $25,000 in personal property coverage, as well as additional coverages. (M2.34-2). On May 7, 2019, while stored "on the hard" at a service facility in Riviera Beach, Florida undergoing retrofit and repairs, the vessel sustained significant damage when an adjacent vessel caught fire. (*Id.*) The Crabtrees made a demand to GLI for payment of the vessel's full insured value. (*Id.*)

---

[1] "A" refers to GLI's appendix and is followed by page number. "M1" refers to the first Montana District Court action, case no. 19-00120; "SD1" refers to the first Southern District of Florida action, case no. 19-23692; "M2" refers to the second Montana District Court action, case no. 19-00164; "SD2" refers to the second Southern District of Florida action after transfer from the Montana District Court, case no. 20-81544; each is followed by docket entry (DE) and page number.

GLI denied coverage and sued the Crabtrees on July 19, 2019 for declaratory relief in the District of Montana. (*Id.*; A.13-56; M1.DE.1). This was an odd venue choice. The complaint alleges venue was proper because the insurance policy was delivered to the Crabtrees at a Montana residence address. (A.15; M1.DE.1-3). The policy's venue provision, often quoted by GLI below, requires suit to be brought in the U.S. District Court in which the insured or the insured's insurance agent resides. (A. 48; M1.DE.1, ex. B-16). The insurance application lists a mailing address for the Crabtrees in Montana, but plainly states that the Crabtrees reside in Georgia. (A.28; M1.DE.1-ex.A-1). The Crabtrees do not have a residence in Montana. The "temporary binder" issued by GLI lists as the Crabtrees' agent Burns & Wilcox, Ltd., with an address in Michigan. (A.33; M1.DE.1, ex.B-1).

GLI has continually pretended it did not know the Crabtrees resided in Georgia, as justification for twice filing suit in the Montana District Court. But on August 1, 2019, GLI attempted to serve the Crabtrees at their Georgia residence, a condominium unit in Georgia. (M1.DE.3-2; M1.DE.4-2). The proof of service states that service was on a condominium concierge after multiple attempts at personal service. (*Id.*) GLI has not contested that this attempted service was ineffective. And while GLI has often asserted that the Crabtrees were evading service, there is no evidence of that.

In late August/early September 2019, the parties agreed that the Montana action would be dismissed and the case re-filed in the Southern District of Florida, where the

incident occurred, where the vessel was located, and where counsel for both GLI and the Crabtrees have offices. (A.245-47; M2.DE.14, ex.2). The Crabtrees agreed to accept service through counsel and to jurisdiction in the Southern District of Florida. (*Id*). GLI wanted the Crabtrees to agree to answer the complaint in the Southern District of Florida, but they refused. (*Id.*) Instead, they only agreed to "respond" to the complaint, reasonably insisting that they could not agree to answer a complaint they had never seen. (*Id.*)

On September 4, 2019, GLI filed a notice of voluntary dismissal of the first Montana action without prejudice. (A.58; M1.DE.5). On September 5, 2019, GLI filed its complaint for declaratory relief in the Southern District of Florida. (A.66-112; SD1.DE1). Despite its repeated assertions that venue was proper in Montana and twice filing suit there, GLI's complaint in the Southern District of Florida alleged that the insurance policy's forum selection provision "***require[ed]*** that suit for a dispute arising under the policy ***must*** be filed in the United States District Court for the Southern District of Florida." (A.66; SD1.DE.1-1). [Emphasis supplied.] In adherence to the parties' agreement, the Crabtrees accepted service through counsel and did not contest jurisdiction in the Southern District of Florida.

Instead, on October 4, 2019 the Crabtrees filed a motion to stay or dismiss GLI's federal court action and to allow the dispute to be resolved in a parallel state court action the Crabtrees filed in Miami-Dade County on September 26, 2019.

(A.114-26; SD1.DE.10). The state court action sought damages not only against GLI, but also against other parties including the owners of the neighboring vessel that caught fire and the company responsible for security in the facility in which the vessel was stored at the time of the incident. GLI characterizes this as a breach of the parties' agreement on jurisdiction in the Southern District of Florida. However, the motion only asked the court to exercise its discretion to defer to the state court action, without contesting the District Court's jurisdiction over the dispute. (*Id.*)

Instead of responding to this motion, on October 8, 2019 GLI filed its second notice of voluntary dismissal of its declaratory action. (A.128; SD1.DE.11). Then, in what Judge Altman, the District Court judge below, referred to as "a confounding turn of events," (A. 624; SD2.DE.208-4), on the same day GLI re-filed its complaint in the Montana District Court. (A.141-84; M2.DE.1). Contrary to what it knew to be true and contrary to what it alleged in the Southern District, the complaint in the Montana District Court alleged venue was proper in Montana because the Crabtrees were "alleged to be residing" at an address in Montana. (A.143; M2.DE1-3).

Knowing the Crabtrees resided in their condo unit in Georgia, GLI again attempted to serve them there. GLI has on several occasions asserted that the Crabtrees were evading service. However, the affidavits of service refute that assertion. (M2.DE5-3; M2.DE6-3). GLI relies on notations in the affidavits that the process server detected movement inside the unit on the first and third of four

unsuccessful attempts at service, suggesting that this must have been the Crabtrees refusing to answer the door of their unit. But other portions of the notes not mentioned by GLI establish that these alleged noises were not made by the Crabtrees.

On the first attempted service on October 16, 2019, the process server was able to speak by phone with an unidentified person inside the unit who advised that the Crabtrees were out of the country and would return on November 5th. Undeterred, the process server tried again on October 19th and October 29th. On October 19th, a concierge told the process server the Crabtrees were out of the country. On October 29th, there was no answer at the door. When a fourth attempt was made on November 5th at 10:18 am, the concierge advised that the Crabtrees were not in. The process server then notes "successful" service on the Crabtrees two minutes later by leaving the suit papers with the concierge. (*Id.*) On December 10, 2019, a process server personally served Mr. Crabtree at the Georgia condo unit. (A.204; M2.DE.13-2).

GLI asserts that the Crabtrees and their counsel acted dishonestly by tricking it into dismissing its first Montana District Court action and re-filing in the Southern District of Florida, only to then seek to pursue a state court action in Florida. GLI further asserts that the actions of the Crabtrees and their counsel violated the parties' agreement and the insurance policy's forum selection clause, and the Crabtrees evaded service, justifying GLI's decision to dismiss the Southern District of Florida case and re-file in the Montana District Court. GLI's assertions make no sense.

To begin with, none of GLI's ranting explains its decision to dismiss and re-file in Montana.  If GLI felt aggrieved by the Crabtrees' preference to pursue a state court action, its remedy was to move to be dismissed from that action, which GLI later did successfully.  (A.521-32; SD2.DE.198, ex.1).    In addition, GLI could have appropriately responded to the Crabtrees' motion in the Southern District of Florida.

Additionally, there would be no reason for the Crabtrees to lure GLI to the Southern District of Florida.  The Crabtrees could have filed the same motion to stay or dismiss in the Montana district court.  The choice was between federal court and state court, not between the Southern District of Florida and the Florida state court.

Furthermore, the Crabtrees did not violate the policy's forum selection clause. It's true that the clause requires suit to be filed in a federal district court where the insured or his insurance agent resided.   GLI itself has made self-contradictory allegations on whether venue was proper in Montana or in the Southern District of Florida, neither of which is a proper venue according to the policy's venue selection clause.  On one occasion, in its response to the Crabtrees' *pro se* motion to dismiss the second Montana District Court case for lack of service and improper venue, GLI argued that venue was proper in the Montana District Court (and it asserted, as it does at every opportunity, that the Crabtrees were evading service). (A.214-28; M2.DE.14). But in the same response GLI asserted, after having personally served Mr. Crabtree at the Crabtrees' residence in Georgia: "If it is indeed the case that THE CRABTREES

do not reside in Montana, contrary to their prior representations [in the insurance application], then GLI would not oppose a transfer of venue, in keeping with the policy's venue selection clause, to the proper United States District Court in either Georgia or Michigan (where the insured's agent resides)." (A.220; M2.DE.14-7).

If filing suit in Florida state court "violates" the forum selection clause, then it does so to no greater extent than GLI's twice filing suit in the Montana District court. And while there is nothing inherently wrong with the parties' agreement to venue in the Southern District of Florida, GLI went one unnecessary step further by falsely and self-contradictorily alleging that the forum selection clause *required* suit to be brought there. The Crabtrees did not violate the forum selection clause merely by asking a federal court to defer to a state court. Again, GLI's remedy was to respond to the motion to stay or dismiss in the Southern District of Florida. Instead, it dismissed the Southern District case and re-filed in Montana. GLI's inappropriate course of action cannot reasonably be explained by its professed grievance over the Crabtrees' conduct in seeking to have the dispute resolved in state court.

GLI's repeated assertion below and on appeal that the Crabtrees evaded service of process is just downright dishonest. GLI bases this false accusation on a process server's notation of detecting noises inside the Crabtrees' condo unit. But the process server's notes clearly indicate that someone was residing in the unit while the

Crabtrees were out of the country. Like many things that GLI says, its assertion that the Crabtrees evaded service of process is pure fiction.

Moreover, as previously stated, the Crabtrees and their counsel did not violate the parties' agreement. The Crabtrees agreed to respond to the complaint in the Southern District of Florida, and they did respond. They agreed not to contest the Southern District's jurisdiction, and they did not. There is a meaningful difference between asking the District Court to defer to a state court action and contending that the District Court lacks jurisdiction over the dispute. If GLI (misguidedly) felt that filing suit in Florida state court violated the spirit of the parties' agreement, its remedy once again was in the Florida state and federal courts, not in Montana federal court.

Contrary to GLI's assertion about the Crabtrees violating the agreement, it was actually GLI that reneged on the agreement. GLI's end of the bargain was to dismiss the first Montana District Court action and then re-file the same action in the Southern District of Florida. So what did GLI do? It reversed the deal, dismissing the Southern District of Florida case and then re-filing back in the Montana District Court.

GLI's portrayal of the Crabtrees and their counsel as being dishonest seems to be an attempt to deflect attention from its own misconduct in serially misrepresenting the facts and brazenly engaging in forum shopping by filing suit twice in a venue that it knew to be improper and contrary to the policy's forum selection provision. To top it all off, after almost a year of litigation in the second Montana District Court

iteration, GLI agreed to have the case transferred back to the Southern District of Florida! (M2.DE.42, 43 & 44). For the second time, GLI agreed that the Southern District of Florida, where its counsel has an office, was the proper venue for resolution of this dispute, although the policy's forum selection clause provides otherwise. GLI has conjured up phony grievances in an attempt to justify its erratic decision to dismiss the first Southern District of Florida case and re-file in Montana. But its agreement to have the second Montana District Court case transferred back again to the Southern District of Florida speaks volumes.

In its brief, GLI harps on Judge Christensen's ruling in the Montana District Court on the two-dismissal rule. The judge mentioned gamesmanship on the part of the Crabtrees. (A.292; M2.DE.20-3). But the gist of his ruling was that the dismissal of the first Montana District Court action was an agreed dismissal; hence, a judicially-engrafted exception to the two-dismissal rule applies. (A.293; M2.DE.20-4).

Moreover, Judge Christensen's ruling was procedurally flawed. The Crabtrees, *pro se*, first raised the two-dismissal rule in their reply in support of their motion to dismiss the second Montana District Court case. (A.265-73; M2.DE.17). The District Court allowed GLI to file a response brief, but it did not provide the Crabtrees an opportunity to respond. (A.275; M2;DE.18). In its response brief, GLI referred to non-evidentiary correspondence, and complaints and dismissals of the previous district court cases it had previously filed. (A.278-88; M2.DE.19; see A.229-63;

M2.DE.14, ex. 1-5). GLI falsely asserted, as it continues to do in this appeal, that the Crabtrees evaded service and tricked it into dismissing the Montana District case. (A.278-88; M2.DE.19). The Crabtrees were unable to respond.

After the agreed transfer, Judge Altman ultimately disagreed with Judge Christensen's ruling in the context of a proper rule 56 motion for summary judgment. (A.621-37; SF2.DE.208). Judge Altman also had the benefit of carefully reviewing the entire record, including the arguments of the Crabtrees' counsel and consideration of subsequent events, such as GLI's agreement to transfer venue to the Southern District of Florida. In granting the Crabtrees' motion for summary judgment, he held that a judicially-engrafted exception to the two-dismissal rule contravenes the plain text of Fed. R. Civ. P. 41(a)(1)(B). Additionally, remarking on GLI's "gamesmanship accusations" against the Crabtrees, he found, "having reviewed this case in some detail … it [is] far from 'clear' that *only* the Crabtrees engaged in forum shopping." (A.633; SF2.DE.208-13). [Emphasis in original text].

It is from that non-final summary judgment ruling that GLI now appeals.

## STANDARD OF REVIEW

A district court's construction of the Federal Rules of Civil Procedure is reviewed *de novo*, and its factual findings for clear error. *Hemispherx Biophrma v. Johannesburg Consol. Invs.*, 553 F. 3d 1351, 1360 (11th Cir. 2008). A district court's decision to reconsider its own or a predecessor district court's interlocutory ruling is

reviewed for an abuse of discretion.  *Harper v. Lawrence County*, 592 F. 3d 1227.

1231-32 (11th Cir. 2010); *Fagan v. City of Vineland*, 22 F. 3d 1283, 1290 (3rd Cir.

1994); *Williams v. Bexar County*, 2000 U.S. App. LEXIS 39928 at 7 (5th Cir. 2000).

## SUMMARY OF THE ARGUMENT

The District Court correctly found that a judicially-engrafted non-unilateral

dismissal exception contravenes the plain language of rule 41(a)(1)(B).  The rule

simply provides that a second voluntary dismissal of the same claim operates as an

adjudication on the merits.  If the drafters had wanted to provide that a dismissal must

be unilateral, they could easily have done so.  Courts can interpret an ambiguous rule

to effectuate its purpose.  But they cannot change a rule's plain meaning.

In any event, the exception should not be applied here because GLI abused the

right of voluntary dismissal without prejudice.  GLI dismissed the Montana District

Court case pursuant to the parties' agreement, but also because it knew it was not a

proper venue.  It then reneged on the agreement by dismissing the Southern District of

Florida case and re-filing in Montana, only to subsequently agree to transfer the case

back again to the Southern District of Florida.  Under the unique circumstances of this

case, the purpose of the two-dismissal rule is served by applying its literal text.

GLI's contentions concerning a "manifest injustice" exception to res judicata

are without merit.  GLI failed to raise this issue below and should not be permitted to

raise it for the first time on appeal.  In addition, it is doubtful that such an exception even exists under applicable law.  Even if it does exist, it does not apply in this case.

The Montana District Court denied the Crabtrees' *pro se* motion to dismiss based on the two-dismissal rule.  This was a procedurally flawed, incorrect non-final ruling that Judge Altman had the discretion to reconsider when ruling on a summary judgment motion after the case was transferred to the Southern District of Florida.

## ARGUMENT

### The District Court Correctly Refused to Apply a Judically-Engrafted Exception to the Two-Dismissal Rule.

### 1. A Non-Unilateral Dismissal Exception Contravenes the Plain Text of Rule 41(a)(1)(B).

Fed. R. Civ. P. 41(a)(1) provides:

(a) VOLUNTARY DISMISSAL.

(1) By the Plaintiff.

(A) *Without a Court Order.*  Subject to Rules 23(e), 23.1(c), 23.2 and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

(i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or

(ii) a stipulation or dismissal signed by all parties who have appeared.

(B) *Effect.*  Unless the notice or stipulation states otherwise, the dismissal is without prejudice. ***But, if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.***

[Emphasis supplied.]

As Judge Altman correctly noted below, the emphasized text above, known as "the two-dismissal rule," plainly contemplates only these two questions: (1) did the plaintiff previously dismiss any federal- or state-court action?; and (2) was the previous dismissed action based on or including the same claim?  In this case, the answers to both questions are unequivocally affirmative.  GLI previously voluntarily dismissed the first Montana District Court action before its subsequent voluntary dismissal of the Southern District of Florida case; and the two claims are undisputedly identical.  Accordingly, the plain text of the rule provides that the second dismissal operates as an adjudication on the merits.  *See Sargeant v. Hall*, 951 F. 3d 1280, 1283 (11th Cir. 2020) ("We give the Federal Rules of Civil Procedure their plain meaning.") The rule plainly "does not require an inquiry into the circumstances of the two dismissals." *Lake at Las Vegas Investors Group v. Pacific Malibu Dev. Corp.*, 933 F. 2d 724, 727 (9th Cir. 1991), *cert. denied*, 503 U.S. 920 (1992).

Yet some court decisions, none of which are binding in this circuit, have by judicial engraftment added a third question: were the two dismissals unilateral?  The leading case, and the only precedential U.S. Circuit Court holding on the issue, is *Poloron Products, Inc. v. Lybrand Ross Bros. & Montgomery*, 534 F. 2d 1012 (2nd Cir. 1976).  There, the court held that "the filing of a notice of dismissal preceded by a dismissal by stipulation knowingly consented to by all parties does not activate the

'two-dismissal' bar against bring an action based on or including the same clam." *Id.* at 1018. The court stated that the rule's purpose of preventing abuse of the right of voluntary dismissal without prejudice was not served when the first dismissal was by stipulation. "Where the purpose behind the 'two dismissal' exception would not appear to be served by its literal application, and where that application's effect would be to close the courthouse doors to an otherwise proper litigant, a court should be most careful not to construe or apply the exception too broadly." *Id.* at 1017. *See also TCW Special Credits v. Fishing Vessel Chloe Z*, 2000 U.S. App. LEXIS 23213 at 5-6 (9th Cir. 2000) (unpublished opinion) (interpreting an analogous Hawaii two-dismissal rule, and citing *Poloron Products*, holding: "Although the Hawaii dismissal was not formally 'stipulated,' it was not unilateral as all parties tacitly agreed to the dismissal in favor of litigating the action in Guam. Also, there is no evidence that the filings and dismissals were part of a strategy to harass the CHOLE Z.")

The problem with *Poloron Products* and its progeny is that these courts have bypassed the plain meaning of the rule to effectuate what they determined to be its underlying purpose. The United States Supreme Court has held that the federal rules of civil procedure are to be given their plain meaning, and "our inquiry is complete if we find the text of the Rule to be clear and unambiguous." *Bus. Guides, Inc. v. Chromatic Communs. Enters.*, 498 U.S. 533, 540-41 (1991). This court and others have held the same. *See e.g., Sargeant v. Hall, supra; United States ex rel. Esenstein*

*v. City of New York*, 540 F. 3d 94, 98 (2nd Cir. 2008) ("When interpreting a rule of procedure, we review the text for its plain meaning. To the extent the text is ambiguous, we seek to determine the intent by looking to other materials…"), *aff'd*, 556 U.S. 928 (2009); *Menke v. Monchecourt*, 17 F. 3d 1007, 1011-12 (7th Cir. 1994) ("judicially amending the Federal Rules of Civil Procedure to provide for attorney's fees is wholly inappropriate where Congress has adequately demonstrated its ability to expressly provide for such an award when and if it should see fit."); *Rogers v. Laurain*, 113 F. 3d 595, 597 (6th Cir. 1997) ("When we can discern an unambiguous and plain meaning from the language of a rule, our task is at an end.").

The Fifth Circuit's decision in *Cabot Golf CL-PP1, LLC v. Nixon Peabody, LLP*, 575 Fed. Appx. 216 (5th Cir. 2014) is instructive. There, the plaintiff filed three virtually identical lawsuits: one in California state court, one in California federal court, and one in the Eastern District of Texas. Plaintiff's counsel discussed with the defendants' counsel pursuing a single action in a single forum, but he did not obtain a stipulation of dismissal. Instead, he voluntarily dismissed the California state and federal actions. A defendant in the remaining action in the Eastern District of Texas successfully moved for dismissal pursuant to the two-dismissal rule. *Id.* at 217.

The Fifth Circuit affirmed, holding that "although the rule may be harsh under these circumstances, the language is clear, and we must apply it as written." *Id.* at 218. Quoting a Seventh Circuit decision, the court stated:

It must be remembered that the federal rules are carefully-crafted instruments designed to achieve, by their uniform application, fairness and expedition in the conduct of federal litigation. Therefore, when a party contends that a court should disregard the express language of a carefully-drawn rule of procedure, that party bears a heavy burden of showing that a departure from the plain language is justified.

*Id.* at 219, quoting *Sutton Place Dev. Co. v. Abacus Mortgage Inv. Co.*, 826 F. 2d 637, 640 (7th Cir. 1987), *cert. denied*, 485 U.S. 961 (1988). The court concluded: "The two-dismissal rule is a narrowly tailored and potentially harsh rule, but the language is clear, and is applicable to these facts."). *Cabot Golf*, at 219.

This court has stated that "in construing the two-dismissal rule, we look to the plain language of the rule and read it as a whole, being mindful of the linguistic choices made by the drafters." *ASX Inv. Corp. v. Newton*, 183 F. 3d 1265, 1267 (11th Cir. 1999) (holding that a court ordered dismissal on plaintiff's motion does not count as a first dismissal under the rule). Referring to the two-dismissal rule, one court stated: "When the language of a rule is plain, courts must follow it regardless of whether the court believes the application of the rule will further its purpose." *Kerr Corp. v. Westside Res., Inc.*, 2007 U.S. Dist. LEXIS 72862 at 2 (W.D. Wis. 2007), *aff'd*, 273 Fed. Appx. 944 (Fed. Cir. 2008).

**2. In Any Event, the Exception Should Not Be Applied Here Because GLI Abused the Right of Voluntary Dismissal Without Prejudice.**

In explaining the rationale behind its announced non-unilateral dismissal exception, the Second Circuit in *Poloron Products* stated that "the purpose of the two-dismissal rule is to prevent an unreasonable use of the plaintiff's unilateral right to dismiss an action prior to the filing of the defendant's responsive pleading. 534 F. 2d at 1017. "The danger of such abuse diminishes, however, where the first dismissal is by stipulation. A dismissal by stipulation is not a unilateral act on the part of the plaintiff but rather is a mutual agreement of the parties." *Id.* In *TCW Special Credits*, the Ninth Circuit explained the reasoning of *Poloron Products* as follows: "the Second Circuit in *Poloron*… reasoned that in such situations where the purpose of the rule – to avoid harassing the defendant – would not be served, courts should be 'most careful not to construe or apply the [rule] too broadly." 2000 U.S. LEXIS 23213 at 5. The Ninth Circuit, in following *Poloron Products*, went on to note that in the case under consideration "there [was] no evidence that the filings and dismissals were part of a strategy to harass the CHLOE Z." *Id*. at 6.

Since the rationale of the judicially engrafted non-unilateral dismissal exception to the two-dismissal rule is to avoid abuse of the right of voluntary dismissal without prejudice, then it stands to reason that the exception should be limited to those instances where the right has not actually been abused. If courts have the right to

engraft an exception to the plain language of the rule to effectuate what they perceive to be its underlying purpose, then they must also have the right to decline to apply the judicially-created exception when appropriate. Otherwise, courts would effectively be conferring rule-making authority on a U.S. Court of Appeals.

We respectfully submit that in the present case the judicially-engrafted exception to the two-dismissal rule should not be applied because GLI has abused the right of voluntary dismissal without prejudice. While Judge Altman based his ruling on the plain meaning of the rule, he also found after careful consideration of the record that GLI was also guilty of forum shopping. The record reflects that GLI's forum shopping was accompanied by misrepresentations of the material facts. Even if this court adopts a non-unilateral dismissal exception to the rule, under the unique circumstances of this case it would not be appropriate to apply it.[2]

While GLI dismissed the first Montana District Court case by agreement with the Crabtrees, it should be noted that GLI had its own reasons for wanting a forum change to the Southern District of Florida. GLI's decision to file suit in the Montana District Court was ill advised, as it was not a proper venue according to the insurance policy's forum selection clause. GLI knew that neither the Crabtrees nor their

---

[2] "[I]n reviewing the decision of a lower court, it must be affirmed if the result is correct, even if the lower court relied upon a wrong ground or gave a wrong reason." *United States v. Campbell*, 26 F. 4th 860, 879 (11th Cir.), *cert. denied*, 143 S. Ct. 95 (2022), quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943), and *Helvering v.*

insurance agent resided in Montana. After unsuccessful attempts to serve the Crabtrees at their Georgia residence due to no fault of the Crabtrees, GLI obtained the Crabtrees' agreement to accept service in the Southern District of Florida, where the incident occurred, the vessel was located, and GLI's counsel had an office.

Inexplicably, GLI almost immediately reneged on the agreement by voluntarily dismissing the first Southern District of Florida case and re-filing back in the Montana District Court. As explained in detail in our Statement of the Case and Facts section, *supra*, GLI's erratic conduct cannot reasonably be explained by its professed grievance over the Crabtrees' attempt to have the insurance dispute litigated in Florida state court together with their state law claims against other defendants. The Crabtrees did not violate either the parties' agreement or the forum selection clause (at least no more so than did GLI by filing in the Montana District Court). GLI's remedy for any perceived impropriety by the Crabtrees would have been in the Florida state and federal courts. Moving the case back to the Montana District Court, where it had already once previously ill-advisedly filed suit, bore no logical connection to the events unfolding in the Florida courts.

GLI did not have a legitimate reason to file in the Montana District Court, not once but twice. GLI possibly recognized this when it subsequently agreed to the transfer of the case back to the Southern District of Florida after allowing it to linger

---

*Gowran*, 302 U.S. 238, 245 (1937).

in Montana for almost a year. This was its second agreement to the Florida federal court venue. GLI's yo-yo-ing back and forth between Montana and Florida district courts was entirely of its own accord.

GLI should not be permitted to shift the blame for this to the Crabtrees. Judge Christensen noted, "[i]t appears that the prior dismissals are attributable to gamesmanship on the part of the Crabtrees." But due to the truncated motion to dismiss procedure, he did not have the benefit of reviewing a response from the Crabtrees' counsel and consideration of the entire record, including subsequent events. His comment, taken from GLI's counsel, was not binding on Judge Altman, who conducted a thorough review of the record in the context of a proper rule 56 summary judgment motion.

Under the unique circumstances of this case, the purpose of the two-dismissal rule is served by applying its literal text. GLI abused the right of non-prejudicial voluntary dismissal in a deliberate design to harass the Crabtrees and deceive the district court. GLI has done nothing to deserve the benefit of an exception to the two-dismissal rule for a non-unilateral dismissal. GLI's first dismissal of the Montana District Court case, while pursuant to an agreement, can hardly be called non-unilateral anymore after it reneged on the agreement by unilaterally shifting the litigation back again to the Montana District Court, only to subsequently agree to transfer the case back again to the Southern District of Florida.

### 3. GLI's Contentions Concerning a "Manifest Injustice" Exception to Res Judicata, Raised for the First Time on Appeal, Are Without Merit.

In its initial brief, GLI attempts to bypass textual questions by first conceding that its second dismissal constituted an adjudication on the merits by operation of the plain meaning of rule 41(a)(1)(B),[3] and then contending that the real issue is whether that adjudication results in res judicata claim preclusion. GLI suggests that the non-unilateral dismissal exception is not an exception to the two-dismissal rule, but rather an exception to res judicata for a "manifest injustice." GLI then contends that due to the alleged dishonesty of the Crabtrees and their counsel, it would be manifestly unjust for the two-dismissal merits adjudication to be applied as a res judicata bar.

The entire premise of GLI's argument -- that the non-unilateral dismissal exception to the two-dismissal rule constitutes an exception to res judicata -- is incorrect. The exception, introduced by *Poloron Products*, was judicially engrafted onto the two-dismissal rule in an attempt to effectuate its perceived purpose. While a two-dismissal rule adjudication results in a res judicata bar, *Poloron Products* and its progeny do not even mention the "manifest injustice" exception to res judicata.

_____

[3] As evidenced by his erratic conduct in yo-yo-ing the case back and forth between the District Courts in Montana and Florida, GLI's counsel seems to bring malpractice woes upon himself. Fortunately for him possibly, in this instance his ineptitude does not necessarily have to be visited upon his client, since this court is not bound to accept GLI's concession on a question of law. *See United States v. Gonzalez*, 71 F.4th 881, 884 (11th Cir. 2023), *cert. denied*, 144 S. Ct. 552 (2024).

Furthermore, GLI failed to raise a "manifest injustice" exception to res judicata below. GLI's contention was based on the non-unilateral dismissal exception to the two-dismissal rule. GLI briefly contended that applying the two-dismissal rule would not serve the purposes of res judicata. However, it never mentioned a manifest injustice exception, which is a very specific issue in res judicata jurisprudence. This court has stated: "The general rule is that we will not consider an issue raised for the first time on appeal." *Finnegan v. Comm'r*, 926 F. 3d 1261, 1271 (11th Cir. 2019). There are no special circumstances here, such as preventing a miscarriage of justice or an issue of great public concern, that might warrant making an exception to this general rule. *See id.*

In any event, there is a substantial question as to whether such an exception even exists under applicable law. This court has stated that "a federal court must apply federal law to determine the preclusive effect of a prior federal court decision." *Citibank, N.A. v. Data Lease Financial Corp.*, 904 F. 2d 1498, 1501 (11th Cir. 1990). Regarding a manifest injustice exception to res judicata, this court stated:

> The Supreme Court… has cautioned against departing from accepted principles of res judicata. In *Federated Department Stores, Inc. v. Moitie*, the Court explained that "[t]he doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply 'no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of res judicata.'" 452 U.S. 394, 401 [] (1981), quoting *Heiser v. Woodruff*, 327 U.S. 726, 733 [] (1946).

*Griswold v. County of Hillsborough*, 598 F. 3d 1289, 1294 (11th Cir. 2010).

Even if the exception exists, it would not be manifestly unjust to enforce res judicata against GLI due to its misconduct as described elsewhere in this brief.

### 4. <u>The District Court Acted Within Its Discretion in Reconsidering the Predecessor Court's Procedurally Flawed, Erroneous Ruling on the Two-Dismissal Rule</u>.

Judge Christensen issued his two-dismissal rule order in the context of a truncated motion to dismiss procedure that deprived the Crabtrees, acting *pro se* at the time, of the right to respond to GLI's unfounded accusations of gamesmanship. GLI was allowed, unopposed, to rely on matters outside the record. GLI now contends that because Judge Christensen relied on matters outside the record, his order is tantamount to a summary judgment ruling and should be considered to be the law of the case, precluding Judge Altman from reconsidering the ruling on a proper summary judgment motion after the case was transferred by agreement to the Southern District of Florida.

Judge Altman correctly found that GLI forfeited its "deemed-to-be-a summary judgment" argument by failing to raise it before Judge Christensen. (A.636; SF2.DE.208-16). We would add that not only did GLI fail to raise the argument before Judge Christensen, but it actively encouraged Judge Christensen to consider matters outside the pleadings. Taking advantage of the situation, GLI was able to advance its distorted, one-sided view without opposition. The proceedings did not in

any way resemble rule 56 summary judgment proceedings. GLI should not be permitted to once again exploit a denial of due process to its advantage.[4]

Judge Altman had every right to reconsider Judge Christensen's procedurally flawed and incorrect interlocutory ruling in the context of a proper rule 56 motion for summary judgment and did not abuse his discretion. *See* Fed. R. Civ. P. 54(b) ("[A]ny order… that adjudicates fewer than all of the claims.. does not end the action as to any of the claims… and may be revised at any time before the entry of a judgment adjudicating all the claims…"); *Harper v. Lawrence County*, 592 F. 3d at 1231 ("It is permissible for a district court to rescind its own interlocutory order."); *Lanier v. Carbone Props. of Mobile, LLC*, 253 Fed. Appx. 861, 863 (11th Cir. 2007) ("[I]f a district court decision is interlocutory and subject to reconsideration, any constraints of the law-of-the-case doctrine are inapplicable."); *Douglas Asphalt Co. v. QORE, Inc.*, 657 F. 3d 1146, 1151 (11th Cir. 2011) ("Every order short of a final decree is subject to reopening at the discretion of the district judge."), quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983); *Dietz v. Bouldin*, 579 U.S. 40, 46 (2016) ("[A] district court ordinarily has the power to modify or rescind its orders at any point prior to final judgment in a civil case."). The

---

[4] Judge Altman also correctly found that Judge Christensen could take judicial notice of prior court dismissals without thereby converting the motion to dismiss into one for summary judgment. (A.634-36; SF2.DE.208-14-16, and cases cited, *e.g.*, *Klopfenstein v. Deutsch Bank Sec., Inc.*, 592 Fed. Appx. 812, 816 n. 5 (11th Cir. 2014)).

law of the case doctrine "does not limit the power of trial judges from reconsidering issues previously decided by a predecessor judge from the same court or from a coordinate jurisdiction." *Fagan v. City of Vineland*, 22 F. 3d at 1290. "Without question, reconsideration of a ruling by a prior judge is within a judge's discretion when it is made in order ***to correct a clear error of law … or reflect new facts that are part of a better developed record***." *Williams v. Bexar County*, 2000 U.S. Dist. App. LEXIS at 7 [emphasis supplied].

## CONCLUSION

It is respectfully submitted that the District Court's non-final ruling granting summary judgment in favor the Crabtrees on the two-dismissal rule should be affirmed.

Respectfully submitted,

DAVID B. PAKULA, ESQ.
DAVID B. PAKULA, P.A.
12301 Taft Street, Suite 200
Pembroke Pines, Florida 33026
Tel.: (954) 217-5123
david@pakulalawfirm.com
info@pakulalawfirm.com

DAVID A. NEBLETT, ESQ.
PERRY & NEBLETT, P.A.
2550 S. Bayshore Drive, Suite 11
Miami, FL 33133
Tel: (305) 856-8408
David@perryneblett.com
jmahaffey@perryneblett.com
tlevy@perryneblett.com

By: _/s/ David B. Pakula_____
DAVID B. PAKULA
Fla. Bar No. 712851

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished electronically to counsel of record via the CM/ECF system on February 3, 2024.

_/s/ David B. Pakula_____
DAVID B. PAKULA

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the type-volume limitations of Fed. R. App. P. 32.  It contains 6,199 words.

_/s/ David B. Pakula_____
DAVID B. PAKULA